554 S.E.2d 421

Pamela G. ALLEN, Respondent,

v.

Floyd E. ALLEN, Appellant.

No. 3398.

Court of Appeals of South Carolina.

Submitted Sept. 4, 2001.

Decided Oct. 29, 2001.

Irby E. Walker, Jr., of Conway and Cynthia Graham Howe, of Van Osdell, Lester, Howe & Jordan, of Myrtle Beach, for appellant.

John L. Sherrill, of Sherrill & Janes, of Surfside Beach, for respondent.

HUFF, J.:

In this domestic action, Floyd E. Allen (the husband) appeals from several aspects of the family court's order, including: (1) inclusion of certain property in the marital estate for purposes of equitable distribution; (2) the court's award of alimony to Pamela G. Allen (the wife); (3) the court's order that he secure his equitable distribution and alimony obligations with a $200,000.00 life insurance policy; (4) certain factual determinations; and (5) the award of $22,500.00 in attorney fees to the wife. We affirm in part, reverse in part, and remand.

### FACTUAL/PROCEDURAL BACKGROUND

The parties were married in September of 1963 at Fort Benning, Georgia. They have three children, all of whom are emancipated.

At the time of the marriage, the husband was 27 years old and the wife was 20. The husband was on active duty in United States Army and was a licensed optometrist. The wife

had completed cosmetology school. After the marriage, the husband was stationed in Ethiopia, where the parties lived for approximately 18 months. Although the wife had a job opportunity in a beauty shop while in Ethiopia, she declined because she was pregnant at the time.

In 1965, the parties relocated to Conway, South Carolina where the husband began a private optometry practice, and he continued operating the business throughout the marriage. In addition, the husband entered the United States Army Reserves and eventually retired as a Colonel.

During the marriage, the wife was employed only sporadically. She worked for the husband for a brief period shortly after he began his private optometry practice. In the mid 1970's, the wife obtained a real estate license. She attempted to sell real estate on a full time basis for approximately one year, but she completed only one sale during that time frame. In the mid 1980's, the wife completed a nursing assistant's course. However, she never worked as a nursing assistant.

The husband left the marital home in November of 1993. The wife instituted this action in April of 1995 seeking, inter alia, a divorce on the ground of desertion, equitable distribution of marital property, and an award of alimony. The husband answered, denying the wife was entitled to a divorce on the ground of desertion.

By temporary order dated May 16, 1995, the family court granted the wife possession and use of the marital home, with the husband to be responsible for payment of all mortgage indebtedness, real estate taxes, and insurance payments on the home. The order also required the husband to pay the cost of providing the wife with automobile and health insurance. Further, the court awarded the wife $1,200.00 per month in alimony, and $4,000.00 in temporary attorney fees. Finally, the order provided the husband could continue making real estate transactions, as had been his practice during the marriage, so long as he made accountings to the wife.

In June of 1995, the wife petitioned the family court for a rule to show cause why the husband should not be held in contempt for failure to comply with the provisions of the temporary order concerning, inter alia, payment of attorney fees and mortgage expenses. The wife subsequently agreed to dismiss the rule.

In July of 1995, the wife sought further temporary relief due to the husband's alleged failure to timely advise her of his intention to sell marital assets. By order dated July 19, 1995, the family court ordered the husband to deliver to the wife monthly accountings with details concerning sales of marital property. The court also required the husband to deliver to the wife copies of sales contracts contemporaneously with the execution of the contracts. As well, the order specifically provided the parties were to divide all net sales proceeds as per their agreement, or if no agreement was reached, the proceeds would be divided at the final hearing on the matter.

In September of 1995, the wife was diagnosed with breast cancer. As a result, in November 1995, the case was continued indefinitely by order of the family court.

The family court held a final hearing on August 6, 1998. At this hearing, the wife withdrew her plea for divorce, and instead sought an order of separate maintenance and support. By order dated July 13, 1999, the family court granted the wife an order of separate support and maintenance. The family court awarded the wife $2,000.00 per month in alimony, $22,500.00 in attorney fees, and a 40% interest in the marital estate, to which the court assigned a value of $1,220,078.17. In addition, the court ordered the husband to continue paying the wife's health insurance premiums until she reached 65 years of age, for which he would receive a credit toward his alimony payments. Finally, the court ordered the husband to maintain a $200,000.00 life insurance policy with the wife as beneficiary.

The husband moved for reconsideration. In a modified final order dated September 9, 1999, the family court ordered the husband to maintain the $200,000.00 life insurance policy to secure the award of alimony and equitable distribution to the wife. The court also instituted changes not pertinent to this appeal, but otherwise declined to grant the husband relief on his post-trial motion. This appeal followed.

### STANDARD OF REVIEW

In appeals from the family court, the appellate court has authority to find the facts in accordance with its own view of the preponderance of the evidence. *Rutherford v. Ruther-*

*ford,* 307 S.C. 199, 204, 414 S.E.2d 157, 160 (1992). However, this broad scope of review does not require us to disregard the findings of the family court. *Stevenson v. Stevenson,* 276 S.C. 475, 477, 279 S.E.2d 616, 617 (1981). Neither are we required to ignore the fact that the trial judge, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Cherry v. Thomasson,* 276 S.C. 524, 525, 280 S.E.2d 541, 541 (1981).

## *LAW/ANALYSIS*

### I.  Predistributed Property

■  The husband first argues the family court erred in including in the marital estate $104,002.57 worth of property which was sold during the pendency of litigation. We agree.

During the pendency of this matter, the husband sold two of the parties' real estate investment properties. The parties agreed to divide the proceeds equally and that the proceeds "may be considered as an advancement of any equitable distribution award." Each party received approximately $52,000.00 from the transaction, and thereafter utilized the funds at their discretion.[1] The wife conceded it would be unfair for her to "share again" in the husband's $52,000.00 distribution.

Despite the prior distribution of the proceeds from the sales to the parties, and the parties agreed upon division of the assets, both the original and modified final orders include the value of the real estate transaction in the value of the marital estate. The court provided an award to the wife of $41,601.03 (40% of the total amount realized from the real estate transactions) and $62,401.54 (60% of the total) to the husband. The transactions were included in the modified final order despite the husband's inclusion of the issue in his motion for reconsideration and the family court judge's express intention to delete the real estate transactions from the marital estate. In a June 7, 1999, letter to the attorneys, the judge stated: "I did not include the [wife's] checking account as a marital asset due to the balance being derived from the advances made from

---

1.  The wife testified she spent most of her $52,000.00 on medical bills, attorney fees, home repairs and living expenses, but she had the $4,000.00 remaining balance in her checking account. The husband testified he placed all of his $52,000.00 in his business savings account.

real estate closings during the pendency of the action. I have also deleted the amount derived from the closings from [the husband's] business account as well."

Further, although the family court included the value of the real estate transactions in the marital pot, it did not require the parties to pay these previous distributions back into the pot. Indeed, the wife has apparently spent all but $4,000.00 of the $52,000.00 distribution to her. Thus, while the court effectively credited the wife with only 40% of the total $104,000.00 transaction, it did not require her to account for the full $52,000.00 that she actually received. The court ordered the husband to pay the wife an additional $27,600.39 to effect a 40% distribution to the wife, inclusive of these funds that had already been divided by the parties per their agreement. Thus, it appears the family court included the value of the real estate transactions in its final valuation of the marital assets, although this asset had already been divided. Moreover, we think the parties' agreement, as well as general notions of fairness, require that the case be remanded for redivision of the marital estate excluding the value of the real estate transactions.[2] Accordingly, we reverse so much of the order as includes these transactions, and remand the case for further proceedings as to this issue, consistent with this opinion.

## II. Alimony

Next, the husband asserts the family court erred in awarding the wife $2,000.00 per month in alimony. More specifically, the husband contends the family court based its decision on erroneous and/or unsupported findings of fact and failed to impute any income to the wife. We find no error.

An award of alimony rests within the sound discretion of the family court and will not be disturbed absent an

---

2. We note it also appears the court may have deducted the $52,000.00 proceeds the husband realized from the transactions from the husband's business account when valuing the marital assets. However, this asset should include the full value of the business asset as of the date of commencement of marital litigation, regardless of whether the husband later used this account to deposit the $52,000.00 proceeds. Likewise, any funds in the wife's checking account at the time of commencement of marital litigation, prior to deposit of her $52,000.00 in proceeds, should be included in the marital estate as well.

abuse of discretion. *Williams v. Williams,* 297 S.C. 208, 210, 375 S.E.2d 349, 350 (Ct.App.1988). "Alimony is a substitute for the support which is normally incident to the marital relationship." *Johnson v. Johnson,* 296 S.C. 289, 300, 372 S.E.2d 107, 113 (Ct.App.1988). Generally, alimony should place the supported spouse, as nearly as is practical, in the same position he or she enjoyed during the marriage. *Id.* It is the duty of the family court to make an alimony award that is fit, equitable, and just if the claim is well founded. *Woodward v. Woodward,* 294 S.C. 210, 217, 363 S.E.2d 413, 417 (Ct.App. 1987).

Factors to be considered in making an alimony award include: (1) duration of the marriage; (2) physical and emotional health of the parties; (3) educational background of the parties; (4) employment history and earning potential of the parties; (5) standard of living established during the marriage; (6) current and reasonably anticipated earnings of the parties; (7) current and reasonably anticipated expenses of the parties; (8) marital and nonmarital properties of the parties; (9) custody of children; (10) marital misconduct or fault; (11) tax consequences; and (12) prior support obligations; as well as (13) other factors the court considers relevant. S.C.Code Ann. § 20–3–130(C) (Supp.2000). No one factor is dispositive. *Lide v. Lide,* 277 S.C. 155, 157, 283 S.E.2d 832, 833 (1981).

The family court found this was a marriage of nearly 36 years. The husband argues this was an erroneous finding of fact inasmuch as the parties were married on September 15, 1963, separated on November 15, 1993, and commenced this litigation on April 18, 1995. According to husbands' calculations, the marriage was one of 31½ years. The husband's argument presupposes the duration of a marriage should be calculated from the date of marriage to the date of commencement of marital litigation. We note however, a marriage is not terminated as of the date the parties separate, or even the commencement of marital litigation. In fact, the parties herein are still married, having not yet obtained an adjudication of divorce. Thus, as of the date of the final order, the family court's finding as to the length of the marriage was correct. Further, the court specifically noted the marriage had endured for 35 years, and the "parties continued to reside

together until the 30th year of their marriage." Therefore, the court clearly considered that the parties had not lived together for the last several years. Accordingly, in regard to the husband's concern that the family court placed too much emphasis on the long duration of the marriage in determining the alimony award, we note the court was well aware of the date of the parties' separation, as well as of the date marital litigation commenced.

The husband also takes exception to the family court's finding he "appeared to be in good health, for he is still involved in the practice of optometry and continues to speculate in real estate." The husband asserts that contrary to the family court's finding, he was 62 years old at the time of trial, and hoped to retire at 65 years old. Moreover, he suffered two detached retinas, requiring surgery on each eye, and had cancer surgery "for several different places" on his nose. We do not think the court's failure to specifically mention the husband's health concerns renders its consideration of the issue erroneous. The crux of the court's consideration was that the husband did not suffer from health problems which limited his ability to work. As of the time of trial, the husband continued to practice optometry on a full time basis, and continued to speculate on real estate as he had during the marriage, thereby earning a gross income of $6,075.00 per month.

The husband next argues the family court erred in finding the parties had a "very comfortable" standard of living with funds available for "vacations" and "luxury automobiles." Specifically, the husband denies the parties owned luxury automobiles. Inasmuch as the parties accumulated a marital estate valued at more than $1,000,000.00, exclusive of predistributed property, we can discern no error in the family court's conclusion the parties enjoyed a very comfortable standard of living and had funds **available** for luxury automobiles. Whether the parties actually owned luxury automobiles is of little consequence.

As a final attack on the award of alimony, the husband asserts the court failed to give proper consideration to the wife's education and ability to work. We disagree. The family court expressly considered the wife's education, including her educational pursuit during the marriage, as well as her

lack of work history and the effect of her physical and emotional health on her ability to work. Our inquiry on appeal is not whether the family court gave the same weight to particular factors as this court would have; rather, our inquiry extends only to whether the family court abused its considerable discretion in assigning weight to the applicable factors. S.C.Code Ann. § 20–3–130(C) (Supp.2000) (In making an award of alimony, the family court must consider all relevant factors and "give weight in such proportion as it finds appropriate" to these factors.). Particularly in light of the wife's lacking work history, her current age, and past medical problems, we can discern no such abuse of discretion.

### III. Support/Equitable Distribution Security

The husband next contends the family court erred in requiring him to secure his alimony and equitable distribution obligations with a $200,000.00 life insurance policy. We agree.

First, we note that statutory law provides that the family court may, in some cases, require a supporting spouse to secure his **support obligation**. *See* S.C.Code Ann. § 20–3–130(D) (Supp.2000) (allowing the court to provide security for the payment of alimony or separate maintenance and support) and S.C.Code Ann. § 20–3–160 (1985) (allowing the provision of security for child support obligations). There is, however, no such specific statutory provision regarding an **equitable distribution** award.

Prior to 1990, the family court was without authority to require a supporting spouse to secure periodic alimony beyond the supporting spouse's lifetime. *Gilfillin v. Gilfillin,* 344 S.C. 407, 411, 544 S.E.2d 829, 831 (2001). In the case of *Hardin v. Hardin,* 294 S.C. 402, 365 S.E.2d 34 (Ct.App.1987), this court found that a family court needed both statutory authority and a finding of special circumstances before it could require a payor spouse to secure periodic alimony beyond the payor spouse's death. *Id.* In 1990, however, the Legislature amended S.C.Code Ann. § 20–3–130 (Supp.2000) to codify the common law rule that periodic alimony terminates at death, but further provided an exception to the rule when such alimony is secured pursuant to subsection (D) of § 20–3–130. *Id.* at 412, 544 S.E.2d at 831. The statute now provides as follows:

> In making an award of alimony or separate maintenance and support, the court may make provision for security for

the payment of the support including, but not limited to, requiring the posting of money, property, and bonds and may require a spouse, with due consideration of the cost of premiums, insurance plans carried by the parties during marriage, insurability of the payor spouse, the probable economic condition of the supported spouse upon the death of the payor spouse, and any other factors the court may deem relevant, to carry and maintain life insurance so as to assure support of a spouse beyond the death of the payor spouse.

S.C.Code Ann. § 20–3–130(D) (Supp.2000).

▉▉▉ Pursuant to this statute, the family court may provide for security of periodic alimony payments beyond the death of the supporting spouse through life insurance "whenever the family court [makes] factual findings concerning five factors favored requiring such insurance." *Gilfillin,* 344 S.C. at 414, 544 S.E.2d at 832. "[T]he use of life insurance is restricted in subsection (D) for use only after the family court makes comprehensive review of five distinct issues." *Id.* Because the family court failed to make a comprehensive review of the necessary factors allowing the security of alimony through life insurance pursuant to S.C.Code § 20–3–130(D) and *Gilfillin,* we remand this issue to the family court.

In regard to the court's order requiring the husband to secure the equitable distribution award with life insurance, we find ourselves confronted with a novel issue.[3] There is clearly no statutory authority allowing for such. As with the issue of the security of alimony through life insurance in *Hardin,* we now are faced with the question of whether or not an equitable division award can be secured by life insurance. In *Hardin* we held, in the absence of statutory authority and special circumstances, the Family Court may not require the payor spouse to secure alimony with life insurance. The rationale behind the holding was the common law rule that periodic alimony liability ceases upon the death of the supporting spouse. Subsequent to the *Hardin* decision, the Legislature

---

**3.** Although the husband does not specifically raise the issue of the family court's authority to order him to secure the equitable distribution award with life insurance, he does assert general error in the family court's order of the same, and charges that no compelling circumstances warranted the provision.

acted to statutorily enable the Family Court to order security of alimony beyond the life of the supporting spouse in certain cases. In *Gilfillin*, the Supreme Court elucidated that the special circumstances as provided in the statute must be comprehensively reviewed by the Family Court before requiring such security.

■ While the concern regarding the common law, and now statutory, rule calling for cessation of periodic alimony upon the supporting spouse's death does not apply to this situation, we do not believe our case law will support an order of security for an equitable distribution award by way of life insurance in the absence of similar statutory authority or a finding of special circumstances which would warrant the imposition of such an obligation upon a party. Although this court can envision situations where security for an equitable distribution award may be warranted, we do not believe the family court may make such an order without justification and statutory authorization.[4] Just as the Legislature responded to the issues raised in *Hardin*, it is likewise within its province to address the concerns raised herein, if it so chooses. We therefore hold, absent the requisite statutory authority and special circumstances, the court was in error to impose upon the husband the obligation to secure the equitable distribution award through life insurance.

## IV.   Factual Finding

Next, the husband argues the family court erred in determining he was "very evasive" in his testimony and in supplying documentation to support the figures set forth in his financial declaration. This argument amounts to a challenge to a credibility finding. On appeal, this court is not required to ignore the fact that the trial judge, who saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Cherry v. Thomasson*, 276 S.C. 524, 525, 280 S.E.2d 541, 541 (1981). Giving due deference to the family court's findings as to the husband's credibility, we decline to disturb the portion of the order containing this comment.

---

4. We note, however, it may be possible for the parties, by way of agreement adopted by the family court, to provide for the security of an equitable distribution award.

## V. Attorney Fees

Lastly, the husband asserts the family court erred in awarding the wife the full amount of her attorney fees, $22,500.00, because the award was based on a conclusory affidavit of fees. Although the husband raised the issue of attorney fees in his post trial motion for reconsideration, the motion does not mention the sufficiency of the wife's attorney fee affidavit. Neither did he object to submission of the affidavit nor challenge its sufficiency at trial. Because the husband asserts this argument for the first time on appeal, the issue is not preserved for our review. *See Wilder Corp. v. Wilke,* 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review.").

For the foregoing reasons, the decision of the family court is **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

GOOLSBY and STILWELL, JJ., concur.