631 S.E.2d 279

**Roberta Selleck PIRRI, Respondent/Appellant,**

v.

**John S. PIRRI, Appellant/Respondent.**

No. 4113.

Court of Appeals of South Carolina.

Heard Dec. 6, 2005.
Decided May 22, 2006.
Rehearing Denied June 30, 2006.

262

Adam Fisher, Jr., of Greenville, for Appellant–Respondent.

J.P. Anderson, Jr., of Greenwood, for Respondent–Appellant.

BEATTY, J.:

In this domestic cross-appeal, John Pirri ("Husband") argues the court erred in valuing marital property and in awarding attorney's fees to Roberta Pirri ("Wife"). Wife argues the court erred in failing to award her alimony, failing to find certain property was marital, and failing to find certain property was transmuted into marital property. We affirm in part, reverse in part, and remand.

## FACTS

Husband and Wife began living together in Connecticut in 1971. They never had a ceremonial wedding. However, Wife began using "Pirri" as her last name sometime in the 1970s, and the parties filed joint income tax returns from the 1970s on. Husband adopted Wife's then nineteen-year-old daughter, Julia, in 1981, and changed her name to Julia Pirri. The parties referred to each other as "husband" and "wife," and Husband's will left his estate to "Mrs. Pirri."

Husband was a successful veterinarian, and Wife worked in the clinic he owned from 1971 until 1978. In 1978, the parties closed the veterinary clinic and converted the property to an indoor shooting range. Husband and Wife continued to work at the shooting range until 1994. Husband later leased the property to the Widewater hotel development corporation in 1998. The parties maintained an affluent lifestyle, with joint checking accounts and investments, although Husband also had substantial investments in his own name.

In 1990, the parties purchased 216 acres in Abbeville County, South Carolina, titled the property in both of their names, and built a large house upon the land. They moved to South Carolina in 1996. In addition to the house and acreage, Husband purchased an airplane after the parties moved to South Carolina. The parties did not have any debt on these assets.

The parties separated in 2002 when Wife discovered sexually explicit emails between Husband and other men. Although Husband testified he was only having "cybersex" and not actual physical encounters, Wife and the parties' daughter, Julia, testified that Husband admitted having sexual encounters with two individuals with whom he was exchanging e-mails. Wife left the home and filed the underlying action seeking: a finding by the family court of a common law marriage; a divorce on the ground of adultery; equitable division of all of the marital estate; alimony; and attorney's fees. Husband counterclaimed, denying the existence of a marriage and requesting certain property and an accounting in the event the court found a marriage existed.

At the beginning of the final hearing, the parties stipulated that a common law marriage existed in South Carolina. Husband was also allowed to amend his pleadings to include a claim for divorce based on one year of continuous separation. After hearing the evidence, the family court issued a final order declaring a common law marriage came into existence between the parties in 1996, when they moved to South Carolina. The court granted Husband a divorce based upon one year of continuous separation, divided the parties' property that was either jointly titled or obtained after 1996, denied Wife's request for alimony, granted Wife's request to return to

264

the use of her maiden name, and awarded Wife $15,000 in attorney's fees. The court denied the motion to alter or amend the judgment, and both Husband and Wife appealed.

## STANDARD OF REVIEW

In appeals from the family court, this court has authority to find the facts in accordance with our own view of the preponderance of the evidence. *Woodall v. Woodall*, 322 S.C. 7, 10, 471 S.E.2d 154, 157 (1996). However, this broad scope of review does not require us to disregard the findings of the family court. *Stevenson v. Stevenson*, 276 S.C. 475, 477, 279 S.E.2d 616, 617 (1981). We are mindful that the family court, which saw and heard the witnesses, was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Bowers v. Bowers*, 349 S.C. 85, 91, 561 S.E.2d 610, 613 (Ct.App.2002)

## LAW/ANALYSIS

### I.  Husband's Appeal

#### A.  Valuation of the Marital Home

Husband argues the family court abused its discretion in adopting Wife's valuation of the marital home and acreage over his valuation. We disagree.

In making an equitable distribution of marital property, the family court must identify real and personal marital property and determine the property's fair market value. *Cannon v. Cannon*, 321 S.C. 44, 48, 467 S.E.2d 132, 134 (Ct.App.1996); *Noll v. Noll*, 297 S.C. 190, 192, 375 S.E.2d 338, 340 (Ct.App.1988). "In the absence of contrary evidence, the court should accept the value the parties assign to a marital asset." *Noll*, 297 S.C. at 194, 375 S.E.2d at 340–41. The family court has broad discretion in valuing the marital property. *Roe v. Roe*, 311 S.C. 471, 478, 429 S.E.2d 830, 835 (Ct.App.1993). A family court may accept the valuation of one party over another, and the court's valuation of marital property will be affirmed if it is within the range of evidence presented. *Woodward v. Woodward*, 294 S.C. 210, 215, 363 S.E.2d 413, 416 (Ct.App.1987) (affirming the family court's valuation of property that was within the range of evidence

presented); *Smith v. Smith*, 294 S.C. 194, 198, 363 S.E.2d 404, 407 (Ct.App.1987) (noting that the family court is within its discretion to accept one party's valuation over the other party's).

There was evidence in the record to support the family court's valuation of the marital home. Both parties presented evidence regarding the value of the Abbeville County acreage and house. Wife had the acreage and 4,500 square foot house appraised by Robert J. Deering. According to the Deering appraisal, the house and land were valued at $725,000 as of September 26, 2002. Husband had the land and house appraised by Keith Ridgeway, who valued the property at $567,400. Although the final divorce decree had "$567,400" typed as the value adopted by the court, the family court judge crossed through this amount, wrote "$725,000" as the value, and initialed the change. Thus, the final written order adopted Wife's value for the acreage and home.

Because the family court was free to accept Wife's valuation over Husband's, we find no abuse of discretion in the valuation of the marital home.

### B. Attorney's Fees

Noting that Wife did not receive a divorce based on adultery, alimony, or transmutation of property, Husband argues Wife's attorney did not obtain a beneficial result and, thus, the family court erred in awarding her $15,000 in attorney's fees. We disagree.

The family court may order payment of attorney's fees to a party pursuant to statute. S.C.Code Ann. § 20–3–130(H) (Supp.2004). Whether to award attorney's fees is a matter within the sound discretion of the trial court, and the award will not be reversed on appeal absent an abuse of discretion. *Bakala v. Bakala*, 352 S.C. 612, 633–34, 576 S.E.2d 156, 167 (2003). In determining whether an award of attorney's fees should be granted, the family court should consider: the parties' ability to pay their own fee; the beneficial results obtained by counsel; the financial conditions of the parties; and the effect of the fee on each parties' standard of living. *E.D.M. v. T.A.M.*, 307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992). To determine the amount of an award of

attorney's fees, the court should consider: the nature, extent, and difficulty of the services rendered; the time necessarily devoted to the case; counsel's professional standing; the contingency of compensation; the beneficial results obtained; and the customary legal fees for similar services. *Glasscock v. Glasscock*, 304 S.C. 158, 161, 403 S.E.2d 313, 315 (1991).

In awarding attorney's fees to Wife, the family court noted it had considered all of the factors in determining whether to award attorney's fees and the appropriate amount of fees. The family court noted that the case involved many issues, including novel issues of law, and that Wife's attorney devoted a great deal of time to the case. The court specifically stated that although "the court was not persuaded as to all the relief sought by [Wife's] attorney, beneficial results were clearly obtained."

We agree with the family court. Although Wife was unsuccessful in her attempt to use Connecticut law to obtain property purchased prior to 1996 and to receive a finding that property had been transmuted, she was successful in obtaining a finding that the parties were common law married, she received half of the post–1996 marital estate, and she was allowed to resume her pre-marital name. The family court adequately considered the factors, and we find no abuse of discretion.

## II. Wife's Appeal

### A. Alimony

Wife argues the family court erred in denying her alimony because the court failed to give adequate weight to the statutory factors by placing too much emphasis on the length of the marriage.[1] We agree.

"An award of alimony rests within the sound discretion of the family court and will not be disturbed absent an abuse of discretion." *Allen v. Allen*, 347 S.C. 177, 183–84,

---

1. Wife also argues the court erred by failing to require security for the payment of support. It does not appear that this issue has been raised below. Thus, it is not preserved for appeal. *Staubes v. City of Folly Beach*, 339 S.C. 406, 412, 529 S.E.2d 543, 546 (2000) (holding that issues not raised to or ruled upon by the trial judge are not preserved for appellate review).

554 S.E.2d 421, 424 (Ct.App.2001). "Alimony is a substitute for the support which is normally incident to the marital relationship." *Craig v. Craig*, 365 S.C. 285, 292, 617 S.E.2d 359, 362 (2005). The purpose of alimony is to place the supported spouse in the position he or she enjoyed during the marriage. *Id.*

Factors to be considered in making an alimony award include: (1) duration of the marriage; (2) physical and emotional health of the parties; (3) educational background of the parties; (4) employment history and earning potential of the parties; (5) standard of living during the marriage; (6) current and reasonably anticipated earnings of the parties; (7) current and reasonably anticipated expenses of the parties; (8) marital and non-marital properties of the parties; (9) custody of children; (10) marital misconduct or fault; (11) tax consequences; (12) prior support obligations; and (13) other factors the court considers relevant. S.C.Code Ann. § 20–3–130(C) (Supp.2004). "Our inquiry on appeal is not whether the family court gave the same weight to particular factors as this court would have; rather, our inquiry extends only to whether the family court abused its considerable discretion in assigning weight to the applicable factors." *Allen v. Allen*, 347 S.C. 177, 186, 554 S.E.2d 421, 425 (Ct.App.2001). "No one factor is dispositive." *Id.* at 184, 554 S.E.2d at 425; *Nienow v. Nienow*, 268 S.C. 161, 171, 232 S.E.2d 504, 510 (1977) (holding that in alimony considerations, "all of the facts and circumstances disclosed by the record should be considered; no one factor should be determined dispositive").

At the time of trial, Wife was sixty-seven years old and Husband was seventy-five years old. The parties lived together from 1971 until 2002. Their common law marriage came into existence when the couple moved to South Carolina in 1996, and the marriage lasted until the parties divorced nearly eight years later in 2004. Nothing in the record indicated that either party suffered from ill health other than "infirmities of age." Husband was a retired veterinarian while Wife only had a high school education. Wife received $415 a month in social security income. Husband admitted he had "vastly more" income and resources than Wife, grossing more than $99,000 in 2002 from social security, retirement accounts,

investment income, and $8,000 per month from the Connecticut rental property.

The parties maintained a high standard of living, living in a large house with no debt. Wife was awarded fifty percent of the marital property, minus amounts she withdrew during the litigation, for a total award of $464,850. In addition to his award of fifty percent of the marital estate, Husband had access to substantial property, including: a gun collection valued at $200,000; rental property in Connecticut; and separate Fidelity accounts valued at $159,000. There was a specific finding by the family court in apportioning the marital property that there was "marital misconduct on the part of [Husband] which the court believes contributed significantly to the breakup of the marriage."

Although the family court indicated that it considered the appropriate factors in denying Wife alimony, the family court focused primarily on the length of the parties' marriage, stating as follows:

> The court denies [Wife's] application for alimony and finds that the duration of the marriage, from 1996 forward, with the final separation of the parties occurring in 2002, to be the conclusive factor. While the court recognizes that the other factors including financial conditions of the parties, needs of the party seeking alimony, respective earning capacities and individual wealth, conduct of the [Husband], ability to pay alimony, and actual income of the parties would militate in favor of [Wife], the court feels these do not outweigh the factor of the duration of the marriage.

The court denied Wife's argument on reconsideration that the court should have awarded alimony considering the statutory factors and "abundant caselaw."

We agree with Wife that the family court abused its discretion in denying alimony. Despite language in the order stating the family court had considered all the statutory factors and they militated in favor of Wife receiving alimony, the entire decision hinged on the length of the marriage.[2] Our

---

2. It appears the family court found the length of the common law marriage was to be measured only by the six years the parties lived together in South Carolina. However, the marriage lasted nearly eight years until the parties' divorce was final in 2004.

courts have not determined that a relatively short marriage is the single determinative factor in denying alimony; alimony has been found proper in some cases where the marriage was of a much shorter duration than that in the present case. *See Nienow,* 268 S.C. at 172, 232 S.E.2d at 510 (remanding the issue of alimony for the family court to consider permanent periodic alimony to the wife in a fourteen-month marriage in light of "wife's accustomed standard of living, the disparity between the parties' wealth, and their respective earning capacities"); *McDowell v. McDowell,* 300 S.C. 96, 100, 386 S.E.2d 468, 470 (Ct.App.1989) (affirming an award of alimony to the wife in a marriage of less than three years duration, despite the "relatively short" length of the marriage, after considering the other factors relevant to an alimony award); *Johnson v. Johnson,* 296 S.C. 289, 301–03, 372 S.E.2d 107, 114–15 (Ct.App.1988) (finding the family court erred in not awarding permanent periodic alimony in a fourteen-month marriage where the factors favored alimony). Further, Husband's fault led to the breakup of the marriage, and he should not be rewarded in the consideration of alimony based upon the marriage's length. *Johnson,* 296 S.C. at 302–03, 372 S.E.2d at 115 ("An at fault spouse cannot destroy a marriage and then claim its short duration entitles him to more favorable consideration when economic adjustments attendant to divorce are made.").

Considering all the factors militating in favor of an award of alimony to Wife, especially the parties' standard of living, their relative incomes, and Husband's fault in the breakup of the marriage, the family court abused its discretion in only considering the length of the marriage. Wife is entitled to alimony. We remand this matter to the family court for a determination of the proper amount of alimony.

## B. Nonmarital property

■ Wife argues the family court erred in failing to find that property obtained in Husband's name prior to the move to South Carolina was transmuted into marital property.[3] We disagree.

---

3. Wife further argued in her brief that the property obtained while the parties lived in Connecticut should be considered marital property by

Property acquired prior to the marriage is generally considered nonmarital. S.C.Code Ann. § 20-7-473(2) (Supp.2004). Nonmarital property may be transmuted into marital property. In determining whether property has been transmuted, courts must consider whether the property: (1) "becomes so commingled with marital property as to be untraceable;" (2) is titled jointly; or (3) "is utilized by the parties in support of the marriage or in some other manner so as to evidence an intent by the parties to make it marital property." *Jenkins v. Jenkins*, 345 S.C. 88, 98, 545 S.E.2d 531, 537 (Ct.App.2001). "Transmutation is a matter of intent to be gleaned from the facts of each case." *Id.* The burden is on the spouse claiming transmutation to produce objective evidence that the parties considered the property to be marital during the marriage. *Id.*

In 1958, Husband purchased the property that housed his veterinary clinic, then became the shooting range, and later was leased in 1998 to Widewater for hotel development. Wife did not draw a salary after 1973, and her support was always from Husband's income from the clinic and shooting range. Wife testified at the final hearing that she did not have control over the money from the lease of the Connecticut property and that sometimes the money was placed in the parties' joint account while it went "other places" at times. Husband testified at the hearing that he used money from the rental property to purchase equipment for the farm.

The family court determined that any transmutation must have occurred, if at all, after the 1996 date of the common law marriage. Reviewing the evidence, the court determined that Wife failed to meet her burden of proving transmutation of the Fidelity Investment account and the profits of the Connecticut property.

We agree with the family court. Although money from Husband's separate property was used to purchase items for the farm or to benefit the parties, nothing in the record shows Husband's intent to transmute the property or that the proceeds from the lease became commingled with marital proper-

---

this court because the parties considered themselves married while they lived there. Wife's counsel abandoned this argument at oral argument. We therefore decline to address it.

ty. Further, mere use of the income from Husband's separate property in support of the marriage does not transmute them into marital property. *Peterkin v. Peterkin*, 293 S.C. 311, 313, 360 S.E.2d 311, 313 (1987) (noting that Husband's separate property inherited or given to him was not transmuted into marital property merely by the use of income derived from this property in furtherance of the marriage). Accordingly, Wife failed to prove transmutation of Husband's separate property acquired prior the 1996 marriage.

## CONCLUSION

The family court did not err in determining the value of the marital home, awarding Wife attorney's fees, and in determining certain property acquired in Husband's name prior to the 1996 common law marriage was nonmarital and not transmuted. However, we find the court abused its discretion in considering only the length of the marriage to the exclusion of all of the other statutory factors in denying Wife alimony. We find Wife was entitled to alimony and remand the matter to the family court for a determination of the appropriate amount. Accordingly, the order of the family court is

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

HEARN, C.J., and HUFF, J., concur.