675 S.E.2d 820

**Linda Huff BROWDER, Appellant,**

v.

**Cecil Ray BROWDER, Jr., Respondent.**

**No. 4524.**

Court of Appeals of South Carolina.

Heard March 5, 2009.

Decided March 26, 2009.

514

J. Michael Taylor, of Columbia, for Appellant.

J. Mark Taylor and Katherine Carruth Link, of West Columbia, for Respondent.

PIEPER, J.:

In this appeal of a divorce decree, Linda Huff Browder (Wife) asserts the family court erred in: (1) denying her request for alimony; (2) failing to hold Cecil Ray Browder, Jr. (Husband) in contempt; (3) valuing and apportioning the marital property; and (4) denying her request for attorney's fees. We affirm in part, reverse in part, and remand

## FACTS/PROCEDURAL HISTORY

Husband and Wife were married on December 15, 1973, and last resided together on November 22, 2003, in Lexington County, South Carolina. Prior to the filing of the instant matter, they were married for thirty-one years and had three children.

During the marriage, Husband worked as a salesman earning approximately $80,000 to $130,000 per year, while Wife was the primary caregiver of their three children. In 1992–93, when their youngest child was twelve, Wife began working part-time and eventually obtained certification from Midlands Technical College for floral design. Wife earned roughly $8.00 per hour through her part-time employment. Significant assets were acquired during Husband's higher income years which included a large home on Lake Murray, two parcels of property, and a home in Columbia, South Carolina, purchased for the use of their children while attending college (the College Street property).

Wife filed for divorce on October 30, 2003, citing the statutory grounds of habitual drunkenness and adultery. Prior to trial, a temporary order was issued ordering Husband to pay $1,750 per month in alimony to Wife. The temporary order also required Husband to provide a detailed accounting of the proceeds received from the sale of the College Street property.

On August 4, 2004, Wife claimed Husband failed to timely account for his handling of the College Street property proceeds and requested that Husband be held in contempt. After issuing a rule to show cause on August 9, 2004, the court ultimately found Husband adequately accounted for the funds at issue and declined to hold him in willful contempt.

The underlying case was heard on February 3, 2005, and March 10, 2005, before the Honorable Richard W. Chewning, III. At the time of the hearing, Husband was fifty-eight and was earning approximately $83,000 per year plus benefits as a salesman. Wife was fifty-four and was working part-time earning $8 per hour at a local floral shop. During the hearing, Husband admitted to committing adultery but denied Wife's allegations of habitual drunkenness. The parties stipulated to a 50/50 division of the marital property and offered expert testimony as to the appraised value of particular marital property. Specifically, Wife asserted the appraised value of their river home in Edisto was $105,000, while Husband offered testimony that the appraised value of the property was $73,000. The marital home, which was listed for sale prior to

the hearing, was appraised at around $700,000 and the parties agreed to split the proceeds equally upon the sale of the home.

In its final order dated August 1, 2005, the court granted Wife a divorce from Husband on the statutory ground of adultery and denied Wife's request for alimony reasoning that Wife's receipt of significant liquid assets in concert with her ability to be employed on a full-time basis did not warrant an award of alimony. The court divided the marital estate equally[1] and concluded that each party would be responsible for paying his or her own attorney's fees. However, Husband was ordered to reimburse Wife for her private investigator's fees and costs. Wife timely filed a motion to alter or amend the judgment, which the court granted in part to correct various mathematical and scrivener's errors. This appeal followed.

## STANDARD OF REVIEW

In appeals from the family court, this court has the authority to find facts in accordance with its own view of the preponderance of the evidence. *Wooten v. Wooten,* 364 S.C. 532, 540, 615 S.E.2d 98, 102 (2005). Despite this broad scope of review, we remain mindful of the findings of the family court judge, who saw and heard the witnesses, and was in a better position to evaluate their credibility and assign comparative weight to their testimony. *Id.*

## LAW/ANALYSIS

 Wife argues the family court erred in failing to award alimony. We agree.

 An award of alimony rests within the sound discretion of the family court and will not be disturbed absent an abuse of discretion. *Dearybury v. Dearybury,* 351 S.C. 278, 282, 569 S.E.2d 367, 369 (2002); *see also McKnight v. McKnight,* 283 S.C. 540, 543, 324 S.E.2d 91, 93 (Ct.App.1984) (stating the decision to grant or deny alimony rests within the discretion of the family court and will not be disturbed on appeal absent an

---

1. At the time of the hearing, the former marital residence was listed for sale and Wife was entitled to the exclusive use and possession of the residence until sale.

abuse thereof). An abuse of discretion occurs if the court's ruling is controlled by an error of law or if the ruling is based upon findings of fact that are without evidentiary support. *Sharps v. Sharps,* 342 S.C. 71, 79, 535 S.E.2d 913, 917 (2000).

"The purpose of alimony is to provide the ex-spouse a substitute for the support which was incident to the former marital relationship." *Love v. Love,* 367 S.C. 493, 497, 626 S.E.2d 56, 58 (Ct.App.2006). "Generally, alimony should place the supported spouse, as nearly as is practical, in the same position he or she enjoyed during the marriage." *Craig v. Craig,* 358 S.C. 548, 554, 595 S.E.2d 837, 840 (Ct.App.2004) (quoting *Allen v. Allen,* 347 S.C. 177, 184, 554 S.E.2d 421, 424 (Ct.App.2001)). The objective of alimony should be to insure that the parties separate on as equal a basis as possible. *Patel v. Patel,* 347 S.C. 281, 291, 555 S.E.2d 386, 391 (2001). Thus, "[i]t is the duty of the family court to make an alimony award that is fit, equitable, and just if the claim is well founded." *Allen,* 347 S.C. at 184, 554 S.E.2d at 424.

In determining an award of alimony, the court is required to consider and give weight in such proportion as it finds appropriate to each of the following factors: (1) duration of the marriage; (2) physical and emotional health of each spouse; (3) educational background of each spouse; (4) employment history and earning potential of each spouse; (5) standard of living established during the marriage; (6) current and reasonably anticipated earnings of both spouses; (7) current and reasonably anticipated expenses and needs of both spouses; (8) marital and nonmarital properties of the parties; (9) custody of the children; (10) marital misconduct or fault of either or both parties; (11) tax consequences as a result of the form of support awarded; (12) existence and extent of any prior support obligations; and (13) such other factors the court considers relevant. S.C.Code Ann. § 20–3–130(C) (Supp.2008). "Fault is an appropriate factor for consideration in determining alimony in cases where the misconduct affected the economic circumstances of the parties or contributed to the breakup of the marriage." *Craig,* 358 S.C. at 554, 595 S.E.2d at 841 (quoting *Smith v. Smith,* 327 S.C. 448, 463, 486 S.E.2d 516, 523–24 (Ct.App.1997)).

We find the family court's denial of alimony in the instant case was an abuse of discretion. Here, the family court denied Wife's request for alimony reasoning that Wife's receipt of significant liquid assets in conjunction with her ability to be employed on a full-time basis would alleviate her financial need. The court further found that "the proximity of the parties' net incomes does not warrant an award of alimony." However, the record fails to support the family court's factual finding that the parties' net incomes are in close proximity. Rather, at the time of the final hearing, the record indicates that Wife was working part-time earning $8 per hour, while Husband was earning $6,912 per month plus benefits. By the time of the hearing on Wife's motion to alter or amend, Wife had attained full-time employment at the rate of $10 per hour. The significant disparity between incomes is clearly evidenced by the record Accordingly, the family court based its decision, in part, upon a finding of fact that is without evidentiary support.

Moreover, the court's emphasis on the speculative date of Husband's retirement was error. Although retirement may play into the factor of anticipated earnings, Husband was fifty-eight and gainfully employed at the time of trial. Any change in circumstances regarding Husband's retirement may warrant a modification of alimony when that event occurs; however, consideration of this anticipated but speculative occurrence at this time was inappropriate.[2] *See Rimer v. Rimer,* 361 S.C. 521, 528, 605 S.E.2d 572, 576 (Ct.App.2004) ("[W]hen the effect of anticipated changes is not readily ascertainable, it is inappropriate for the family court to speculate as to the effect of such anticipated changes.").

Based upon our own view of the facts, we conclude an award of alimony is appropriate. We have considered all of the previously cited factors regarding alimony. We place significant weight in this case on five of those factors: (1) duration of the marriage; (2) earnings of each spouse; (3) educational background of each spouse; (4) employment history and earn-

---

2. South Carolina law allows a supporting spouse the right to petition the court for a reduction in alimony based upon a showing of a material change in circumstances. S.C.Code Ann. § 20–3–170 (1985). Our ruling does not in any way impinge upon any party's right to pursue a modification of the alimony award based upon the requisite showing.

ing potential; and (5) marital misconduct or fault of either party. The fact that this was a thirty year marriage in which Wife spent the bulk of the marriage caring for their children weighs heavily in favor of alimony. Additionally, Husband has a college degree and over thirty years of experience in sales, while Wife is a high school graduate and has little to no full-time work history; in this same regard, we have noted the disparity between the incomes of Husband and Wife. While we recognize that the purpose of alimony is not to penalize one party and reward the other, we also cannot ignore the fact that Husband admitted to committing adultery. Therefore, under our view of the evidence, we find an award of alimony is warranted. *See Patel*, 347 S.C. at 291, 555 S.E.2d at 391 (stating the objective of alimony should be to insure that the parties separate on as equal a basis as possible). Accordingly, we reverse the family court's denial of alimony and remand the matter for a determination of an appropriate award of alimony, including retroactive alimony. *See Patel v. Patel*, 359 S.C. 515, 531, 599 S.E.2d 114, 122 (2004) (holding wife was entitled to retroactive alimony when alimony was awarded on remand).

Wife next asserts the court erred in failing to hold Husband in contempt. We disagree.

On appeal, a decision regarding contempt is not subject to reversal absent an abuse of discretion. *Brandt v. Gooding*, 368 S.C. 618, 627, 630 S.E.2d 259, 263 (2006). An abuse of discretion occurs if the court's ruling is controlled by an error of law or if the ruling is based upon findings of fact that are without evidentiary support. *Davis v. Davis*, 372 S.C. 64, 82, 641 S.E.2d 446, 455 (Ct.App.2006).

Contempt results from the willful disobedience of a court order. *Bigham v. Bigham*, 264 S.C. 101, 104, 212 S.E.2d 594, 596 (1975). Willful disobedience requires an act to be "done voluntarily and intentionally with the specific intent to do something the law forbids, or with the specific intent to fail to do something the law requires to be done; that is to say, with bad purpose either to disobey or disregard the law." *Spartanburg Co. Dep't of Soc. Servs. v. Padgett*, 296 S.C. 79, 82–83, 370 S.E.2d 872, 874 (1988). A party seeking a contempt finding for violation of a court order must show the

order's existence and facts establishing the other party did not comply with the order. *Abate v. Abate*, 377 S.C. 548, 553, 660 S.E.2d 515, 518 (Ct.App.2008).

Wife asserts Husband's failure to provide documentation of three accounts paid from the proceeds of the sale of the College Street property amounted to willful contempt of the court's order for an accounting. At trial, Husband explained that he repeatedly requested records of the accounts at issue to no avail. He further explained that the records were sent to the marital residence and that he was unable to find the pertinent information that Wife requested. In addition to his efforts to obtain the records, Husband's testimony at trial thoroughly explained the amounts and debts of the disputed accounts, which were accumulated prior to the instant action to pay for the parties' expenses as well as the expenses of their children. Based on this evidence, the court found Husband adequately explained the allocation of the proceeds of the College Street property and concluded that the debts were marital. This finding is supported by the evidence. Accordingly, the denial of a contempt finding by the court was not an abuse of discretion.

Turning to the next issue on appeal, Wife asserts the court erred in its valuation and apportionment of the marital property. Specifically, Wife contests (1) the valuation of the Edisto River property, (2) the valuation of Husband's personal property, and (3) the assignment of Husband's credit card debt as marital. We disagree.

In making an equitable distribution of marital property, the court must: (1) identify the marital property to be divided between the parties; (2) determine the fair market value of the property; (3) apportion the marital estate according to the contributions, both direct and indirect, of each party to the acquisition of the property during the marriage, their respective assets and incomes, and any special equities they may have in marital assets; and (4) provide for an equitable division of the marital estate, including the manner in which the distribution is to take place. *Gardner v. Gardner*, 368 S.C. 134, 136, 628 S.E.2d 37, 38 (2006). Generally, marital property subject to distribution is valued as of the date the marital litigation is filed or commenced. *Id.* The court has

broad discretion in valuing marital property. *Pirri v. Pirri*, 369 S.C. 258, 264, 631 S.E.2d 279, 283 (Ct.App.2006). As such, "[the] court may accept the valuation of one party over another, and the court's valuation of marital property will be affirmed if it is within the range of evidence presented." *Id.*

Here, the parties stipulated to a 50/50 division of the marital assets. Among the assets to be apportioned was the River House property on Edisto River. Wife asserts the court's valuation of the property at $73,000 was an abuse of discretion. Both parties offered expert testimony from an appraiser as well as their own appraisal reports in valuing the River House property. Husband's appraiser valued the property at $73,000, and Wife's appraiser valued the property at $105,000. Despite Wife's assertion the property is worth more based on other comparable properties in the area, Husband's expert testified the valuation was adjusted to reflect the differences in the comparable properties. Because the court may accept one party's valuation over another and the valuation based on Husband's appraisal was within the evidence presented at trial, we find no abuse of discretion. *See Pirri*, 369 S.C. at 264, 631 S.E.2d at 283 (stating the court's valuation of marital property will be affirmed if it is within the range of evidence presented).

As to Husband's personal property, Wife asserts Husband's boat, valued at $2,500, and a DVD player, valued at $100, were improperly excluded from the court's valuation of the marital estate. This issue was not ruled upon by the trial court nor was it raised in Wife's Rule 59(e) motion to alter or amend; thus, it is not preserved for our review. *See Lucas v. Rawl Family Ltd. P'ship*, 359 S.C. 505, 511, 598 S.E.2d 712, 715 (2004) (stating an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review); *Woodward v. Woodward*, 294 S.C. 210, 363 S.E.2d 413 (Ct.App.1987) (finding husband's argument that the court erred in failing to consider certain items in equitable distribution was not preserved for appellate review where the issue was not raised to and ruled upon by the trial court).

As to the credit card debt in connection with the disputed funds from the College Street property, this issue

was discussed in regard to the contempt finding above. As noted, there is sufficient evidence in the record to support the finding that these debts were marital. Husband's testimony revealed these debts, which had been used to pay the couple's monthly expenses as well as the expenses of their children while in college, were accumulated over time prior to the parties' separation. Additionally, despite Wife's assertion that it cannot be presumed that the debts were incurred before the filing of the instant action, the evidence indicated the disputed balance transfers took place in May and August 2003, prior to Wife's filing for divorce in October 2003. The proceeds from the sale of the College Street property were received on November 3, 2003, and the payments on the balance transfers occurred between November 5, 2003, and November 11, 2003. Accordingly, the·court's inclusion of these debts as part of the marital estate was not an abuse of discretion.

■■■ Lastly, Wife asserts the court erred in failing to award attorney's fees. We agree.

■■■ An award of attorney's fees lies within the sound discretion of the family court and will not be disturbed absent an abuse of discretion. *Patel v. Patel*, 359 S.C. 515, 533, 599 S.E.2d 114, 123 (2004). In determining whether to award attorney's fees, the court should consider each party's ability to pay his or her own fees, the beneficial results obtained by counsel, the parties' respective financial conditions, and the effect of the fee on the parties' standard of living. *E.D.M. v. T.A.M.*, 307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992).

■■■ Where the substantive results achieved by counsel are reversed on appeal, an award of attorney's fees is subject to reversal. *Sexton v. Sexton*, 310 S.C. 501, 503, 427 S.E.2d 665, 666 (1993). In light of our disposition as to alimony, the results achieved by Wife's counsel were beneficial. Accordingly, we find an award of fees is appropriate and remand the issue to the family court for a determination of reasonable fees and costs.

## CONCLUSION

For the foregoing reasons, the order of the family court is

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

HEARN, C.J., and LOCKEMY, J., concur.