# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

Alicia W. Cohen, Appellant,

v.

Wolanda A. Cohen, Respondent.

Appellate Case No. 2019-001210

———————

Appeal From Charleston County
Michèle Patrão Forsythe, Family Court Judge

———————

Opinion No. 5927
Heard May 12, 2022 – Filed August 3, 2022

———————

**REVERSED**

———————

William J. Clifford, of William J. Clifford, LLC, of
North Charleston, for Appellant.

Alan David Toporek, of Uricchio Howe Krell Jacobson
Toporek Theos & Keith, PA, of Charleston, for
Respondent.

———————

**WILLIAMS, C.J.:** In this domestic matter, Alicia Cohen appeals the family
court's divorce decree, arguing the court erred in denying her request for alimony
and attorney's fees. We reverse.

## FACTS/PROCEDURAL HISTORY

On April 2, 2008, Wolanda Cohen (Husband) and Wife married.[1]  On April 27, 2017, Wife filed for divorce on the ground of adultery.  On June 12, 2017, the family court entered a temporary consent order wherein Husband agreed to pay $3,000 of Wife's attorney's fees and $1,100 per month in alimony.  As a result of Husband's failure to comply with discovery requests, to pay temporary support, and to pay Wife's attorney's fees as agreed, Wife filed motions to compel and show cause.  Husband eventually complied with the discovery requests and paid the amounts owed to Wife under the temporary consent order.

At the August 21, 2018 divorce hearing, Wife testified she worked as a school teacher throughout the marriage and indicated she had a bachelor's degree and two master's degrees, one of which she earned during the marriage.  She explained she obtained her master's degrees in the hope of someday becoming a school principal and had applied for several principal positions.  Wife stated she owed only $11,000 on a habitat for humanity home she acquired and had a $407 monthly mortgage payment.  She claimed Husband was unemployed for half of their marriage and that he did not support her financially.  Husband was injured and unable to work for much of their marriage.  She stated that when Husband was working, he would sometimes contribute $800 a month to the marriage but he usually did not contribute anything.  She testified that in 2017, Husband was able to earn $80,000 because he had accrued seniority in the International Longshoremen's Association (ILA) and was "high on the ladder."  Wife also testified that she did not walk away from the marriage; rather, Husband pursued a relationship with her second cousin and she could not condone or forgive such behavior.

Husband testified that prior to the marriage, he joined the ILA and worked sporadically as a longshoreman in Charleston.  He stated he was laid off by the ILA approximately nine times from 2005 to 2018.  Husband explained that after he was laid off by the ILA in 2008, he worked a series of jobs before returning to work as a longshoreman in 2010.  He further explained that while working as a longshoreman, he was injured twice and did not work for several years as a result.  He agreed that while he made less money than Wife from 2008 to 2015, he started to earn more money than Wife in 2016.

Husband and Wife both submitted financial declarations to the court.  Wife's gross monthly income was $4,713.53, or approximately $56,562 per year.  Wife's financial declaration also showed she had a net monthly income of $2,788.49 and net monthly expenses of $3,699.28.  Although Wife had a small monthly mortgage

---

[1] The parties did not have any children.

payment remaining on the balance of her home, she had substantial monthly installment payments, of which a large portion was federal student loans. Husband reported a gross monthly income of $6,745, or approximately $80,940 per year and a net monthly income of $4,103. He declared total monthly expenses of $4,544, the majority of which was rent and his obligation to pay spousal support under the temporary consent order. Husband also admitted he shares his monthly expenses with a live-in girlfriend.

The family court ruled from the bench and granted the parties a divorce on the ground of adultery but took the issues of property division, alimony, and attorney's fees under advisement. On December 31, 2018, the family court issued an order (Order I) awarding Wife sole ownership of her home and $650 per month in permanent periodic alimony. The family court concluded that although Wife was better educated than Husband and had more stable employment and her future earnings were likely to increase and her expenses decrease, Husband's current income was significantly higher than that of Wife. Finally, the family court ordered Husband to pay $10,500 of Wife's attorney's fees. The family court found that while "[t]he parties each [had] an ability to pay their own [attorney's] fees," Wife's attorney achieved a beneficial result and paying Wife's attorney's fees would not place an undue burden on Husband.

Husband filed a Rule 59(e), SCRCP motion, which the family court granted in part and denied in part. On July 9, 2019, after reconsidering the statutory factors for alimony, the family court filed an order (Order II) finding Wife was not entitled to alimony because, by Wife's admission, Husband did not provide financial support to her during the marriage. The family court also determined Wife was not entitled to attorney's fees because Husband conceded he had no interest in the marital home and the discovery process was not burdensome on either party. This appeal followed.

## ISSUES ON APPEAL

I.  Did the family court err in denying Wife alimony?

II.  Did the family court err in denying Wife attorney's fees and costs?

## STANDARD OF REVIEW

"The family court is a court of equity." *Lewis v. Lewis*, 392 S.C. 381, 386, 709 S.E.2d 650, 652 (2011). On appeal from the family court, this court reviews

factual and legal issues de novo, with the exceptions of evidentiary and procedural rulings. *See Stone v. Thompson*, 428 S.C. 79, 91, 833 S.E.2d 266, 272 (2019); *Stoney v. Stoney*, 422 S.C. 593, 594 n.2, 596, 813 S.E.2d 486, 486 n.2, 487 (2018) (per curiam). Therefore, this court may find facts in accordance with its own view of the preponderance of the evidence. *Posner v. Posner*, 383 S.C. 26, 31, 677 S.E.2d 616, 619 (Ct. App. 2009). However, this broad scope of review does not prevent this court from recognizing the family court's superior position to evaluate witness credibility and assign comparative weight to testimony. *Lewis*, 392 S.C. at 392, 709 S.E.2d at 655. The appellant maintains the burden of convincing the appellate court that the family court's findings were made in error or were unsubstantiated by the evidence. *Posner*, 383 S.C. at 31, 677 S.E.2d at 619.

## LAW/ANALYSIS

### I.      Alimony

Wife argues the family court erred in denying her permanent periodic alimony in Order II. Specifically, Wife emphasizes she supported Husband while he accrued the ILA seniority that now enables him to earn more money than her. We agree and reverse on this issue.

"Generally, the purpose of alimony is to place the supported spouse, to the extent possible, in the position she enjoyed during the marriage." *Butler v. Butler*, 385 S.C. 328, 336, 684 S.E.2d 191, 195 (Ct. App. 2009). Permanent, periodic alimony is a substitute for support that is normally incidental to marriage. *Johnson v. Johnson*, 296 S.C. 289, 300, 372 S.E.2d 107, 113 (Ct. App. 1988). In determining alimony,

> the court must consider and give weight in such proportion as it finds appropriate to all of the following factors:
>
> (1) duration of the marriage; (2) physical and emotional health of the parties; (3) educational background of the parties; (4) employment history and earning potential of the parties; (5) standard of living established during the marriage; (6) current and reasonably anticipated earnings of the parties; (7) current and reasonably anticipated expenses of the parties; (8) marital and nonmarital properties of the parties; (9) custody of children; (10)

marital misconduct or fault; (11) tax consequences; and
(12) prior support obligations; as well as (13) other
factors the court considers relevant.

*Allen v. Allen*, 347 S.C. 177, 184, 554 S.E.2d 421, 424 (Ct. App. 2001); *see also*
S.C. Code Ann. § 20-3-130(C) (2014) (listing the factors to consider in
determining an alimony award). "No one factor is dispositive." *Allen*, 347 S.C. at
184, 554 S.E.2d at 425.

We find the family court erred in denying Wife alimony. In denying Wife alimony
in Order II, the family court made statements of fact and considered only the
disposition of the parties' assets, focusing primarily on Wife's award of the home as
nonmarital property, the small mortgage on the home, and the fact that Wife's
expenses would be minimal after she paid off the mortgage. The court focusing its
alimony analysis on these few considerations was an error as it failed to adequately
consider all of the mandatory, statutory factors in determining Wife was ineligible
for alimony. *See id.* at 184, 554 S.E.2d at 424 (listing the factors to be considered
when making an award of alimony).

Under our evaluation of the statutory factors, we find Wife has a need for alimony.
Initially, we note that Wife and Husband's ten-year marriage, while not long-term,
was not of such a short duration to overly affect our alimony determination,
especially considering other factors militate towards Husband paying alimony. *See*
*Pirri v. Pirri*, 369 S.C. 258, 268–69, 631 S.E.2d 279, 285 (Ct. App. 2006) (finding
that barring alimony solely based on an eight-year marriage's length was an error
when the parties' standard of living, relative incomes, and the husband's fault in
breaking up the marriage favored awarding wife alimony); *McDowell v.*
*McDowell*, 300 S.C. 96, 100, 386 S.E.2d 468, 470 (Ct. App. 1989) (affirming a
family court's alimony award to a husband when the factors supported the court's
decision despite the marriage lasting only two and a half years). Furthermore, even
though Husband was injured at work several times throughout the marriage and
was laid off several times following the 2008 recession,[2] his income is greatly
higher than Wife's after accruing seniority with the ILA. Although Wife is more
educated than Husband and has intentions of becoming a school principal,[3]
Husband's current and future earning capacity significantly outweighs that of Wife.

---

[2] Wife testified that Husband did not work for half of their marriage.
[3] Wife obtained a Bachelor's of Science degree, a Master's in Education degree,
and a Master's in Supervision degree from South Carolina State University.

Turning to the parties' financial declarations, Wife shows a financial need for alimony as her monthly expenses far exceed her monthly net income. While the family court relied heavily on the fact that Wife received the marital home and would have a decrease in expenses when the relatively small mortgage was paid off, the $407.28 decrease in expenses associated with the mortgage still leaves Wife with a monthly deficit of $503.51. Wife also has a principal balance of $207,039.86 in federal student loans. Despite Wife's testimony that her total student loan balance will be forgiven after five more years of employment in a Title I or science-based education program, this is speculative and not guaranteed, meaning any reduction in monthly expenses associated with the loans' forgiveness is tentative. *See Heath v. Heath*, 295 S.C. 312, 315, 368 S.E.2d 222, 224 (Ct. App. 1988) (stating a Husband's future earning potential was inherently speculative and remanding for the trial court to consider the parties' current financial situations). On the other hand, given his seniority with the ILA, Husband has the ability to pay Wife alimony. Husband's 2017 income tax return reported a gross income of $80,942. His financial declaration reflects a monthly net income of $4,103 and total monthly expenses of $4,544 that primarily consists of rent and his $1,100 temporary support to Wife. While Husband's financial declaration shows a deficit, it quickly changes to a surplus when the original $650 alimony obligation in Order I is substituted for the $1,100 temporary support obligation.

Finally, Wife supported Husband through his injuries and a great economic downturn using her education and stable employment as a school teacher. Wife's support allowed Husband to heal his injuries, return to work, receive senior status with the ILA, and realize a substantial pay increase. Wife now shows a need for alimony and would not require alimony but for Husband's adulterous relationship. Wife should not be penalized now, and left in need, because she supported Husband for the majority of their marriage, especially considering Husband's ability to contribute financially to the marriage transpired at the end of the marriage and after his adulterous relationship. Because Wife shows a need for alimony, Husband has the ability to pay alimony, and the other factors militate towards awarding Wife alimony, we find the family court erred in denying Wife alimony. *See* § 20-3-130(C) (stating the court must consider and give weight in such proportion as it finds appropriate to the alimony factors). Therefore, we reverse on this issue and reinstate Husband's alimony obligation found in Order I.

---

Husband completed one semester of college from South Carolina State University and did not acquire a degree.

## II.    Attorney's Fees

Wife argues she is entitled to attorney's fees because Husband's adultery caused the divorce and Husband's failure to comply with discovery requests and the temporary consent order extended the litigation.  Husband argues the family court properly denied Wife's request for attorney's fees because most of his litigation misconduct occurred while he was pro se.  We reverse on this issue.

"The [family] court, . . . after considering the financial resources and marital fault of both parties, may order one party to pay a reasonable amount to the other for attorney fees . . . ."  S.C. Code Ann. § 20-3-130(H) (2014).

> In determining whether an attorney's fee should be awarded, the following factors should be considered: (1) the party's ability to pay his/her own attorney's fee; (2) beneficial results obtained by the attorney; (3) the parties' respective financial conditions; (4) effect of the attorney's fee on each party's standard of living.

*E.D.M. v. T.A.M.*, 307 S.C. 471, 476–77, 415 S.E.2d 812, 816 (1992).  Misconduct or uncooperativeness during the course of litigation can be a factor in awarding attorney's fees.  *Rogers v. Rogers*, 432 S.C. 168, 194, 851 S.E.2d 447, 461 (Ct. App. 2020).

We find the family court erred in denying Wife attorney's fees in Order II.  The family court determined Wife was not entitled to attorney's fees because Husband conceded he had no interest in the marital home and there was not "a great deal of discovery done in this case."  This analysis fails to evaluate any of the factors courts should weigh when determining whether to award attorney's fees.

We find Wife is entitled to a reasonable sum for the costs she incurred in maintaining this action for divorce.  First, but for Husband's infidelity, Wife would not have incurred the expenses associated with hiring an attorney.  *See* § 20-3-130(H) (stating the family court may consider the marital fault of both parties in ordering one party to pay attorney's fees).  Second, Husband forced Wife to incur additional fees during the litigation through his uncooperativeness with Wife's discovery requests and the court's temporary consent order.  This misconduct forced Wife to file motions to compel and a rule to show cause to complete discovery and receive her temporary support.  Despite Husband's argument that much of his misconduct occurred while he was a pro se litigant, he

was on notice of the litigation and the court's temporary consent order. Pro se litigants have a duty to remain up-to-date on the progress of their case and comply with court orders. *Hill v. Dott*, 345 S.C. 304, 310, 547 S.E.2d 894, 897 (Ct. App. 2001) ("[A] party has a duty to monitor the progress of his case. Lack of familiarity with legal proceedings is unacceptable and the court will not hold a layman to any lesser standard than is applied to an attorney." (alteration in original) (quoting *Goodson v. Am. Bankers Ins. Co.*, 295 S.C. 400, 403, 368 S.E.2d 687, 689 (Ct. App. 1988))).

Further, Wife's attorney's fees were $17,719—a substantial portion of her annual income and value of her other property. Bearing the burden of the entire fee would drastically reduce her standard of living and force her to live well below her means. Also, because we now reinstate Husband's alimony obligation, Wife's attorney obtained a beneficial result from the litigation in securing her alimony and in preventing Husband from gaining special equity in Wife's real property. Contrarily, Husband is now in a senior position with the ILA and earns a substantial amount more than Wife. With his large salary increase, Husband has a greater ability to pay his, and a portion of Wife's, attorney's fees, without the fees affecting his standard of living. The fees would not be an undue burden on Husband if paid in monthly installments as contemplated in Order I. Moreover, Husband's monthly expenses are shared with a cohabitating girlfriend. Because Wife would not have incurred litigation expenses but for Husband's adultery, she was burdened with more fees because of Husband's uncooperativeness, Husband has a better ability to pay a portion of Wife's attorney's fees, and the fee is less likely to affect Husband's standard of living, we find Wife is entitled to Husband paying a portion of her attorney's fees. Therefore, we reverse on this issue and reinstate Wife's attorney's fees from Order I.

**CONCLUSION**

Accordingly, the family court's Order II is reversed regarding alimony and attorney's fees, and we now reinstate Order I.

**REVERSED.**

**KONDUROS and VINSON, JJ., concur.**