599 S.E.2d 114

**Anand B. PATEL, Appellant–Respondent**

v.

**Nalini Raja PATEL, Respondent–Appellant.**

No. 25824.

Supreme Court of South Carolina.

Heard Feb. 19, 2004.
Decided May 24, 2004.
Rehearing Denied July 12, 2004.

John O. McDougall, Peter George Currence, and Emma I. Bryson, of McDougall & Self, of Sumter, for Appellant–Respondent.

Harvey L. Golden and J. Michael Taylor, of Golden, Taylor, Potterfield & Barron, of Columbia, for Respondent–Appellant.

Richard Giles Whiting, of Columbia, Guardian ad Litem.

Acting Justice MACAULAY:

This is a domestic relations case. Both parties appeal. We affirm as modified.

## FACTS

This domestic relations dispute has continued for more than eight years without resolution. Anand B. Patel (Husband) and Nalini Raja Patel (Wife) were married on July 7, 1980. Three children were born of the marriage. The parties' oldest son, is seventeen. The parties' only daughter, is thirteen. The parties' youngest son, is eleven.

Husband sued Wife for divorce in December 1995. On October 23, 1997, the family court issued the final divorce decree. The family court ruled that neither party was entitled to alimony, awarded custody of the children to Husband, split the marital estate 65 percent/35 percent in favor of Husband, and awarded Husband $41,920.94 in attorney's fees.

In June 1998, Husband informed Wife by letter that he was relocating with the children to Southern California. The court denied Wife's request for a restraining order prohibiting the move. The appeal of the relocation order was consolidated with the appeal from the divorce decree.

In October 2000, the Court of Appeals issued a unanimous, unpublished opinion, in which it (1) reversed the family court's award of custody and ordered Husband to return the children to South Carolina, (2) reversed and remanded the denial of alimony to Wife, and (3) reversed the award of attorney's fees to Husband, but affirmed the 65/35 property division in favor of Husband. *Patel v. Patel,* Op. No. 2000–UP–653 (S.C. Ct.App. dated Oct. 26, 2000). In January 2001, this Court granted Husband's petition for an emergency supersedeas to stay the return of the children to South Carolina.

This Court denied Wife's petition for a writ of certiorari on the property division issue, and granted Husband's petition on the alimony and custody matters. The Court issued an opin-

ion remanding the issues to the trial court for a new hearing on the custody and alimony issues. *Patel v. Patel,* 347 S.C. 281, 555 S.E.2d 386 (2001).

While the remand trial was pending, Wife filed a motion for pendente lite alimony. The family court awarded Wife $2,500.00 per month in pendente lite alimony. The issue of retroactive alimony was reserved for the final trial on remand.

The final merits hearing on the remanded issues of alimony, child custody, and child support was held over seven days in October and December 2002. The trial court held Wife was entitled to permanent periodic alimony of $1,500.00 per month beginning February 1, 2003. The court did not address the issue of retroactive alimony. The trial court awarded custody of the oldest child to Husband and awarded custody of the two younger children to Wife. The order required Husband to pay $1,150.00 per month in child support and denied either party attorney's fees and costs.

Both Husband and Wife appeal. On February 18, 2003, this Court assumed jurisdiction pursuant to Rule 204(b), SCACR.

## ISSUES

I. Did the family court properly deny Husband's motion to recuse?

II. Did the family court abuse its discretion in awarding custody of the two younger children to Wife?

III. Did the family court abuse its discretion in awarding alimony to Wife, denying Wife retroactive alimony, and setting the amount of alimony at $1,500.00 per month?

IV. Did the family court abuse its discretion in setting the amount of child support and denying Wife transportation expenses?

V. Did the family court abuse its discretion in denying Wife attorney's fees and litigation expenses?

## LAW/ANALYSIS

Where a family court order is appealed, we have jurisdiction to find facts based on our own view of the prepon-

derance of the evidence. The Court is not required to disregard the findings of the trial judge who saw and heard the witnesses and was in a better position to evaluate their credibility. *Strout v. Strout*, 284 S.C. 429, 327 S.E.2d 74 (1985). Our broad scope of review does not relieve the appealing party of the burden of showing that the family court committed error. *Skinner v. King*, 272 S.C. 520, 252 S.E.2d 891 (1979).

## I. Recusal

The underlying circumstances supporting Husband's motion to recuse arose after we remanded the case to the family court for a new hearing on custody and alimony. In August 2002, Wife contacted three State Senators, asking for their help in having a trial date set for the remand trial.[1] All of these senators wrote letters on behalf of Wife to The Honorable James A. Spruill III, the family court judge presiding over the matter.[2] Two of the senators sent copies of their letters to Chief Justice Toal.

Judge Spruill wrote the three senators advising them that he was not permitted to consider these communications and immediately set a trial date for October 14, 2002. Husband filed a Motion to Recuse and requested a continuance. Judge Spruill denied both motions. Husband then filed suit in federal court against Judge Spruill and the three senators alleging a violation of due process. The pleadings were served on Judge Spruill prior to the merits hearing. The final hearing on the merits began on October 14 and Husband renewed his motion for continuance and recusal, both of which Judge Spruill denied.

■ Husband asks this Court to acknowledge the appearance of impropriety with the activities of the three senators, and their alleged attempts to sway the opinions of Judge Spruill and Chief Justice Toal. Husband does not wish for the

---

1. The trial date had originally been set for May 6, 2002, but had been postponed. In April 2002, both parties requested a continuance, which was granted, in part, to allow time for discovery to be conducted in California.

2. The letters were respectively dated August 23, 2002, August 30, 2002, and September 3, 2002.

case to be remanded on the custody issue based on Judge Spruill's failure to disqualify himself. On the issue of alimony, Husband requests this Court deny alimony because he was denied a hearing before an impartial tribunal. We conclude Judge Spruill was not required to disqualify himself. Accordingly, Husband was not denied an impartial tribunal based on Judge Spruill's failure to disqualify himself.

 Under South Carolina law, if there is no evidence of judicial prejudice, a judge's failure to disqualify himself will not be reversed on appeal. *Roche v. Young Bros., Inc.,* 332 S.C. 75, 504 S.E.2d 311 (1998). In *Roche,* the Court applied Canon 3(E)(1)(a) of Rule 501, SCACR. Under Canon 3(E)(1)(a), a judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to, instances where he has a personal bias or prejudice against a party. It is not sufficient for a party seeking disqualification to simply allege bias; the party must show some evidence of bias or prejudice. *Mallett v. Mallett,* 323 S.C. 141, 473 S.E.2d 804 (Ct.App.1996). If there is no evidence of judicial bias or prejudice, a judge's failure to disqualify himself will not be reversed on appeal. *Ellis v. Procter & Gamble Dist. Co.,* 315 S.C. 283, 433 S.E.2d 856 (1993).

A judge's impartiality might reasonably be questioned when his factual findings are not supported by the record. *Ellis,* 315 S.C. at 285, 433 S.E.2d at 857. There is no evidence in the record suggesting that Judge Spruill was prejudiced by the senators' letters. Judge Spruill acted promptly to alleviate any perception of injustice. Shortly after receiving the letters, Judge Spruill wrote the senators advising them that he is not permitted to consider communications from outside the court. Judge Spruill sent copies of these letters to both parties' attorneys. In his January 2, 2003 order, Judge Spruill chastised Wife for her "inappropriate attempt" to influence the court by her contact with the legislators. Because there is no evidence in the record supporting Husband's contention, we conclude Judge Spruill did not err in failing to disqualify himself.

We granted Husband's motion to argue against precedent on the issue of judicial recusal. Husband urges this court to

adopt the standard for judicial recusal set forth in *Liljeberg v. Health Services Acquisition Corp.,* 486 U.S. 847, 108 S.Ct. 2194, 100 L.Ed.2d 855 (1988). Additionally, Husband argues that this Court should adopt a de novo standard of review on the recusal issue. In *Liljeberg,* the United States Supreme Court considered the construction of 28 U.S.C. § 455(a) (2001). The federal statute is similar to Canon 3(E)(1)(a). Section 455(a) provides, "[a]ny justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."

The issue before the Supreme Court was whether Section 455(a) could be violated based on the appearance of partiality. The Court held that under Section 455(a), recusal is required even when there is no evidence of bias if a reasonable person, knowing all the circumstances, would expect that the judge is biased. *Liljeberg,* 486 U.S. at 860–61, 108 S.Ct. at 2203, 100 L.Ed.2d 855 at 872–73. Husband argues that the Supreme Court's holding imputes an objective test in applying Section 455(a), in that it does not require evidence of judicial prejudice to warrant disqualification.

We have carefully considered Husband's arguments. Assuming without deciding that there is merit in Husband's policy arguments supporting the federal rule and de novo standard of review, we decline to adopt these standards at this time because Husband has not demonstrated that he would prevail under the *Liljeberg* test under these facts even if reviewed de novo. There is no evidence in the record leading an objective observer to question Judge Spruill's impartiality after he received the senators' letters. The letters would not have caused an objective mind, viewing all the facts of the case, to determine Judge Spruill was biased. Disqualification issues are necessarily decided on the facts of each case. In some cases, contact by legislators with members of the judiciary may warrant disqualification. However, to hold that disqualification was mandated under the facts of this case, would require every judge to recuse himself upon receiving unsolicited contact from the legislature, or other potentially influential persons/ organizations, or even officious intermeddlers. Such a holding could invite the less scrupulous to employ this stratagem to eliminate any judge. Therefore, we conclude

Husband has failed to show Judge Spruill erred in failing to disqualify himself.

## II. Custody

"In a custody dispute, the paramount and controlling factor is the welfare and best interests of the child." *Matthews v. Matthews*, 273 S.C. 130, 132, 254 S.E.2d 801, 802 (1979).

The family court concluded the older son should remain in California with Husband to complete the remainder of his junior year and the entirety of his senior year in high school and that the two younger children should return to South Carolina to live with Wife.

On appeal Husband argues the family court erred in granting custody of the two younger children to Wife because (1) the court expressed reservations about Wife's fitness, (2) Dillon schools were adequate only if the children attended in-state colleges, and (3) daughter's preference for living with Wife was given controlling weight in awarding her custody of daughter and younger son.

The family court expressed reservations about Wife's many episodes of uncontrollable anger that took place within the presence of the children. The court found that Wife's anger management problems were ameliorated because the anger was directed toward Husband, not the children. Wife's conduct is clearly unacceptable. The recorded telephone calls between Husband and Wife reveal the extent of her anger and use of profanity.

Husband's fitness as a parent is also problematic. Dr. Boland, a clinical psychologist, testified Husband has exhibited signs of histrionic personality disorder. One characteristic associated with the disorder is a tendency to over-react to minor events and display abrupt outbursts of sarcasm. A former employee of the Days Inn in Dillon testified Husband would scream at Wife when she called. Additionally, Wife's calls to the children had to go through Husband first.

Husband has engaged in additional acts of manipulative behavior. While the children were in California, Husband did not make any effort to keep Wife informed about their children's health. He did not inform Wife that older son was

diagnosed with Attention Deficit Disorder and had been treated for depression. Husband did not inform Wife that both sons were seeing a psychiatrist.

Both parents have exhibited far less than exemplary behavior. In determining custody, the trial court weighed heavily the fact that Wife had been the primary caretaker before the separation. Although there is no rule of law requiring custody be awarded to the primary caretaker, there is an assumption that custody will be awarded to the primary caretaker. Roy T. Stuckey, *Marital Litigation in South Carolina*, 433 (3d ed. 2001). In the present case, the court found that Husband devoted long hours to his work, but remained active in the lives of the children. A breadwinner's work habits are relevant to custody decisions when considered in the context of the time spent with the children. *See Parris v. Parris*, 319 S.C. 308, 311, 460 S.E.2d 571, 573 (1995) (awarding custody to the primary caretaker over the primary breadwinner). In the present case, Wife saw to the children's day-to-day needs, prepared their meals, took them to school, and saw that the children attended school related activities and religious functions.

Under the facts of this case, we find that the family court did not abuse its discretion in concluding that Wife is a fit parent, despite the court's concerns. Moreover, the court did not abuse its discretion in weighing heavily the fact that Wife was the children's primary caretaker.

Second, Husband contends the trial court gave insufficient weight to the superiority of the schools in California in making the custody decision. The family court stated that the schools in Dillon are sufficient to provide the children with the tools to succeed in the colleges within South Carolina. Husband relies primarily on PPSE (Pupil Performance Scholarship Exams) scores in evaluating the schools. We conclude that the best interests of the children are not compromised by attending the Dillon, South Carolina schools. The Dillon schools do not directly and adversely affect the best interests of the children, despite the fact that the California schools have higher PPSE scores. Therefore, we decline to modify the custody award simply because one form of schooling is

commonly considered superior to another when both schools are adequate.

Third, Husband argues daughter's preference for living with Wife was given controlling weight in the family court's custody decision. South Carolina Code Ann. § 20–7–1515 (Supp.2003) provides:

> In determining the best interest of a child, the court must consider the child's reasonable preference for custody. The court shall place weight upon the preference based on the child's age, experience, maturity, judgment, and ability to express preference.

The leading case is *Guinan v. Guinan,* 254 S.C. 554, 176 S.E.2d 173 (1970). In *Guinan,* the Court gave "great weight" to the wishes of a sixteen year old. In this case, daughter, who is now thirteen years old, has consistently expressed a definite desire to live with Wife. The younger son, who is now eleven years old, did not seem to have as definite a preference, although he expressed some interest in staying in California.[3]

We hold that the family court did not abuse its discretion in awarding custody of the two younger children to Wife. Several witnesses testified that the two younger children were happy in Dillon when they visited their mother. A teacher at Dillon Christian School testified that her daughter and the parties' daughter have maintained a friendship and that daughter has other friends in Dillon. Another parent with children enrolled at the school testified that the parties' daughter visited his daughter in Dillon and has maintained friendships with other students. Both parties agree that the two younger children should not be separated. We agree. Although the legislature gives family court judges the authority "to order joint or divided custody where the court finds it is in the best interests of the child," S.C.Code Ann. § 20–7–420(42) (Supp.2003), joint or divided custody should only be awarded where there are exceptional circumstances. Under

---

**3.** Husband characterizes younger son's preference as one for the "Father." The Guardian ad Litem testified younger son liked "California a little bit more now, that he likes his school, had friends, and was doing well." We conclude that although younger son expressed some positive opinions about living in California, he did not necessarily attribute this to living with Husband as opposed to Wife.

the facts of this case, we hold the trial judge did not abuse his discretion in awarding custody of the two younger children to Wife.

### III. Alimony

The amount of alimony is within the trial court's sound discretion and should not be disturbed on appeal unless an abuse of discretion is shown. *Smith v. Smith*, 264 S.C. 624, 627–28, 216 S.E.2d 541, 543 (1975). An abuse of discretion occurs either when a court is controlled by some error of law, or where the order is based upon findings of fact lacking evidentiary support. *Townsend v. Townsend*, 356 S.C. 70, 587 S.E.2d 118 (Ct.App.2003).

The trial court awarded Wife $1,500.00 per month in permanent, periodic alimony. Husband appeals the award of any alimony. Wife appeals the amount of the award and the trial court's denial of retroactive alimony.

Husband argues any award of alimony in this case discourages Wife from procuring employment. *See Brandi v. Brandi*, 302 S.C. 353, 358, 396 S.E.2d 124, 127 (Ct.App.1990) (trial judge abused his discretion in the award of alimony because Wife's expenses appear excessive when considered in conjunction with the fact that she has not procured employment since her separation). We disagree and affirm the award and amount of permanent, periodic alimony.

The family court did not abuse its discretion in awarding Wife alimony. Three important factors in awarding periodic alimony are (1) the duration of the marriage; (2) the overall financial situation of the parties, especially the ability of the supporting spouse to pay; and (3) whether either spouse was more at fault than the other. The fact that this was a long marriage of seventeen years weighs in favor of alimony. Second, Husband has the ability to pay the alimony award. The trial court found that both parties have substantial property from the division of the estate. Third, Husband is highly educated, having degrees in biochemistry and pharmacy. Husband currently manages a successful motel business. Wife has a high school education and has been out of the work force for more than twenty years.

Wife contends the $1,500.00 per month alimony award is insufficient. The trial court gave considerable weight to Wife

not seeking any employment in the five years since the divorce. Wife testified she has not sought employment for the last five years because her efforts on this case have required her full attention. Wife has engaged in what she considers "community service" work in the Indian community. Wife writes and sells articles for the *India Post* newspaper. In working for the paper, Wife attends various conferences throughout the country and is "reimbursed" from the sponsoring organizations.

▇▇▇ We conclude the family court did not abuse its discretion in awarding Wife $1,500.00 per month in permanent, periodic alimony. The family court's findings are consistent with an application of the factors set forth in South Carolina Code Ann. § 20–3–130(C) (Supp.2003).[4] The family court noted the extended length of the marriage, Husband's superior educational background, and the employment history of the parties. Wife, thirty-six years old at the time of the divorce, has a twelfth-grade education. During the marriage she worked in both family businesses instead of seeking salaried employment. While an award of alimony is appropriate in this case, we agree that any increase in the permanent, periodic alimony would act as a disincentive to Wife in pursuing employment. Accordingly, we find no error.

---

4. The factors are as follows: (1) the duration of the marriage together with the ages of the parties at the time of the marriage and at the time of the divorce or separate maintenance action between the parties; (2) physical and emotional condition of each spouse; (3) the educational background of each spouse, together with the need of each spouse for additional training or education in order to achieve that spouse's income potential; (4) the employment history and earning potential of each spouse; (5) the standard of living established during the marriage; (6) the current and reasonably anticipated earnings of both spouses; (7) the current and reasonably anticipated expenses and needs of both spouses; (8) the marital and nonmarital properties of the parties, including those apportioned to him or her in the divorce or separate maintenance action; (9) custody of the children, particularly where conditions or circumstances render it appropriate that the custodian not be required to seek employment outside the home, or must be of limited nature; (10) marital misconduct or fault of either; (11) the tax consequences to each party as a result of the particular form of support awarded; (12) existence of support from a prior marriage or any other reason of either party; and (13) such other factors the court considers relevant.

S.C.Code Ann. § 20–3–130(C) (Supp.2003)

Wife argues the Court should award her retroactive alimony. We agree, albeit, not in the amount Wife requests. Wife asks this Court to award her $152,500.00 in unpaid alimony plus judgment interest.[5] This Court has not specifically addressed whether a party is entitled to retroactive alimony when an appellate court remands for reconsideration of alimony (but does not award alimony on appeal) and the family court then awards alimony. In *Green v. Green*, 320 S.C. 347, 465 S.E.2d 130 (Ct.App.1995), the Court of Appeals concluded that under these circumstances a family court may award alimony retroactive to the date of the original hearing unless it would be an abuse of discretion.

Under our view of the facts, Wife should be awarded alimony for all months she was not paid since the date of the original hearing at a rate of $1,500.00. Therefore, Wife should be awarded $1,500.00 per month in retroactive alimony for the sixty-one months she requests. Husband owes Wife $91,500.00 plus interest at a rate of fourteen percent per annum.[6] Interest is due on alimony at the time each support payment becomes due. *See Thornton v. Thornton*, 328 S.C. 96, 114, 492 S.E.2d 86, 96 (1997). Accordingly, Wife's post-judgment interest on the alimony arrearage should be calculated from the date each payment was due.

## IV. Child Support

Child support awards are addressed to the sound discretion of the family court and absent abuse of discretion will not be disturbed on appeal. *Townsend, supra*. Wife appeals the trial judge's award of $1,150.00 in child support per month.

---

5. Wife derives the $152,500.00 by multiplying the original $2,500.00 pendente lite award by the sixty-one months that passed between Husband's last payment of $2,500.00 in May of 1997 and Judge Spruill's August 12, 2002 pendente lite award, which awarded $2,500.00 per month.

6. South Carolina Code Ann. § 34–31–20(B) (Supp.2003) provides all money decrees shall draw interest at a rate of twelve percent per year. However, this statute was amended, effective January 1, 2001. Therefore, the twelve percent interest rate only applies to causes of action arising or accruing on or after January 1, 2001. 2000 S.C. Act No. 344, § 4. Because this action arose prior to January 1, 2001, the applicable interest rate is fourteen percent per annum.

Wife argues the family court improperly imputed $900.00 per month in minimum wage to her and improperly imputed $1,958.00 per month of interest on her income. Wife contends that even if the trial judge properly imputed income to her, the award of $1,150.00 deviates from the South Carolina Department of Social Services Guidelines formula.

We hold the family court properly imputed income to Wife. It is proper to impute income to a party who is voluntarily unemployed or underemployed. *Mazzone v. Miles,* 341 S.C. 203, 532 S.E.2d 890 (Ct.App.2000). Wife testified that she has not sought employment because her full-time job is "to get custody of [her] children." Wife also indicated that she has no intention of seeking employment if she acquires custody of the children. Although Wife has been out of the work force for more than twenty years, the family court found she is capable and energetic.

Wife argues that under the Guidelines, she is entitled to $1,605.00 in child support per month. The family court was not required to follow the Guidelines in this case. In cases where the parents' combined income exceeds the highest amount contemplated by the Guidelines, courts are to decide the issue of amount on a case-by-case basis.[7] 27 S.C.Code Ann. Reg. 114–4710(A)(3) (Supp.2003). We find no abuse of discretion in the family court's child support award.

Additionally, Wife argues the trial judge erred in ordering that both parties share equally in transportation expenses to effect the visitation order. We hold that under the circumstances of this case, and considering Husband's unilateral action in moving to California, Husband should bear the transportation expenses for older son to travel to South Carolina and the two younger children to travel to California to effect the visitation schedule set forth by the family court's order dated January 2, 2003 and filed January 6, 2003.

### V. Attorney's Fees and Litigation Expenses

Wife argues the trial court erroneously failed to award her reasonable attorney's fees and litigation expenses. We disagree.

---

7. Cases where the parents' combined income exceeds $15,000 per month or $180,000 per year are decided on a case-by-case basis.

Pursuant to South Carolina Code Ann. § 20–7–420(38) (Supp.2003), attorney's fees may be assessed against a party in an action brought in the family court. An award of attorney's fees rests within the sound discretion of the trial judge and should not be disturbed on appeal unless there is an abuse of discretion. *Ariail v. Ariail,* 295 S.C. 486, 369 S.E.2d 146 (Ct.App.1988).

Wife's counsel agreed to represent her in the remand trial for a flat fee of $35,000.00. The flat fee did not include costs such as depositions, Guardian ad Litem fees, and other expenses. The flat fee of $35,000.00 plus other expenses totals more than $90,000.00.

The family court concluded that "each party is well able to pay reasonable attorney's fees to their respective attorney" and each party should pay their own attorney's fees because each was "entirely unreasonable with respect to part of the remand issues." The family court went on to note that Husband has substantially greater wealth than Wife, but Wife "appears to have paid her fees prior to the trial and the fees will not affect the standard of living of either party."

In determining whether to award attorney's fees, the court should consider each party's ability to pay his or her own fee; the beneficial results obtained by the attorney; the parties' respective financial conditions; and the effect of the fee on each party's standard of living. *E.D.M. v. T.A.M,* 307 S.C. 471, 415 S.E.2d 812 (1992). The only factor weighing in favor of Wife is the beneficial results achieved by her attorney. The trial judge found that Wife could pay her attorney's fees and that it would not affect her standard of living. The family court judge did not abuse his discretion. Wife has not shown she is unable to pay her attorney's fees and by all accounts has, in fact, paid the $35,000 portion of her fee. *See R.G.M. v. D.E.M.,* 306 S.C. 145, 410 S.E.2d 564 (1991) (denying wife's request for attorney's fees where the wife provided no reasons for not being able to pay fees).

The same considerations that apply to awarding attorney's fees apply to awarding litigation expenses. *Nienow v. Nienow,* 268 S.C. 161, 173, 232 S.E.2d 504, 510 (1977). Wife has a stronger case for litigation expenses than attorney's fees. Wife argues she paid $6,000.00 for her California attor-

neys, $811.38 for the two depositions, and $1,962.00 for Husband's CPA in California. Wife would not have incurred these expenses had Husband not moved to California. The Court has awarded litigation expenses in other cases, where one party has incurred expenses as a result of the unilateral action of another. *See e.g., Stevenson v. Stevenson,* 295 S.C. 412, 368 S.E.2d 901 (1988) (reimbursable expenses include the reasonable and necessary expenses incurred in obtaining evidence of spouse's infidelity). We order Husband to pay Wife $8,773.38 in litigation expenses.

## CONCLUSION

For the foregoing reasons we affirm as modified the decision of the family court. We conclude (1) the family court judge did not abuse his discretion in failing to recuse himself; (2) the family court did not abuse its discretion in awarding custody of the two younger children to Wife; (3) Wife is entitled to $1,500.00 per month in permanent periodic alimony and $91,500.00 in retroactive alimony plus interest at a rate of fourteen percent per annum; (4) Husband is to pay Wife $1,150.00 per month in child support and transportation expenses needed to effect the family court's visitation schedule; and (5) Wife is responsible for her own attorney's fees, but is owed $8,773.38 in litigation expenses by Husband.

**AFFIRMED AS MODIFIED.**

MOORE, Acting C.J., WALLER, PLEICONES, JJ., and Acting Justice JOHN W. KITTREDGE, concur.