THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 James A. McGee, Respondent,
 v.
 Monica Kay McGee, Appellant.
 
 
 

Appeal From Richland County
 Jeffrey Young, Family Court Judge

Unpublished Opinion No. 2007-UP-148
Heard March 6, 2007  Filed April 4, 2007   

AFFIRMED AS MODIFIED

 
 
 
 John D. Elliott, of Columbia, for Appellant.
 C. Vance Stricklin, Jr. and Katherine Carruth Link, of West Columbia, for Respondent.
 
 
 

PER CURIAM:  In this family law action, Monica McGee (Wife) appeals the family courts order awarding her lump sum alimony of $250 per month for three years.  Wife claims lump sum alimony was not an appropriate type of alimony.  Further, she argues the actual amount of alimony was inadequate.  We affirm as modified. 
FACTS

Wife and James McGee (Husband) married on April 5, 1988, and had two children: Chelsea, born in 1991, and Alex, born in 1995.  In April of 2003, on the evening of their fifteenth anniversary, Husband informed Wife that he did not love her anymore.  However, Husband did not move out of the house until July 11, 2003.  
After moving out, Husband bought a condominium.  Kelly Gregory moved into Husbands condominium following her separation from her husband.  Kelly and her husband had been neighbors and friends with both Husband and Wife, and their children were friends.  Kelly told her husband that she was living in Husbands condominium as a roommate only.  
On July 29, 2003, Husband filed for a decree of separate support and maintenance.  On September 3, 2003, Wife filed an answer and counterclaim.  On June 14, 2004, Wife filed an amended answer and counterclaim requesting a divorce on the ground of adultery.  Husband amended his pleadings to seek a divorce on the ground of one-years continuous separation.  
On November 30, 2004, the family court conducted a hearing.  Several witnesses testified that both Husband and Wife drank practically every night.  Husbands witnesses testified that Wife drank as much or more than Husband.  Witnesses also testified to incidents where Wife displayed excessive anger.  David Gregory, Kellys ex-husband, testified that after Wife learned about Kelly moving in with Husband, he found a computer monitor Wife borrowed from him broken in a field beside her house as well as some ski equipment he left at her house for a combined yard sale.  Another neighbor, Wolfgang Scheider, testified that he witnessed Wife pounding on the window of Husbands truck and screaming at him.  Husband testified that in August 2003, Wife took some possessions he received from his deceased parents as well as his personal belongings and threw them out in the driveway.  
Vicki Brunson mentored the McGees and the Gregorys children.  Brunson testified that Husband told her how he would sneak out of the house when Wife was asleep to see Kelly.  Brunson further testified that Husband first disclosed to her that he was having a relationship with Kelly in January or February 2003.  
In July 2001, Wife began work as a paralegal at Nelson Mullins Riley and Scarborough.  Wife earned in excess of $50,000 per year and received excellent performance reviews.  Following the separation, Wife experienced emotional problems stemming from the separation.  Consequently, Wifes performance at work declined, and she was fired in September 2004.  Husband and Wife stipulated to a yearly income of $40,000 for Wife.  At the time of trial, Wife was drawing unemployment and searching for a job as a paralegal at Columbia law firms.[1]  
Husband works for South Carolina Electric and Gas.  He is paid an hourly rate of $28.37 and is guaranteed two hundred hours of overtime each year at the rate of $44 per hour.  Husband can request more overtime hours but is not guaranteed to receive them.  He also testified he earned more overtime in 2004 than he earned in the past due to additional training required for work.  His income in recent years was: $34,000 in 1999; $55,000 in 2000; $56,000 in 2001; $62,000 in 2002; and $70,846.24 in 2003.  Husband testified that he expected to earn between $70,000 and $75,000 in 2005.  
On February 7, 2005, the family court issued an order granting the parties a divorce on the ground of adultery.  The parties previously entered into a settlement agreement for custody and visitation as well as the division of real and personal property.  Under the agreement, Wife received custody of the children, and Husband received reasonable and liberal visitation.  
Additionally, Wife received: (1) the marital residence; (2) her 401(k) Retirement Plan; (3) her individual retirement account; and (4) the 1995 Ford Crown Victoria.  Husband received: (1) his SCANA stock retirement plan; (2) his 2001 Ford F150 truck; and (3) the joint savings account at the Utilities Employees Credit Union.  Further, each party retained ownership of the personal property in his or her possession and any checking, savings, or other accounts in his or her name.  Additionally, Husband was to pay Wife $2000 in two equal installments as part of the agreement regarding property division.  
The family court found Husband engaged in an open and adulterous affair with a woman who was a friend of the couple, and Husbands actions were the primary cause of the breakup of the marriage.  Further, the family court found Wife lost her job partially due to the grief caused by Husbands affair, which led to the breakup of the marriage.  
The family court awarded Wife alimony of $250 per month for twenty-four months without specifying the type of alimony awarded.  The family court considered factors including: (1) the lifestyle of the parties during the marriage; (2) Wifes need for financial assistance, particularly in regards to the residence where the children lived; and (3) the ability of Husband to pay.  The family court also ordered Husband to pay child support of $995 per month.  The court took several factors into account, including: (1) the fault and demise of the marriage; (2) the relative assets, resources, and income of the parties; (3) the independent assets of Husband; and (4) the results obtained by Wifes counsel.  Ultimately, the family court ordered Husband to pay Wifes attorneys fees in the amount of $4000. 
Both Husband and Wife filed Rule 59(e), SCRCP, motions for reconsideration.  Husband requested the family court include sufficient findings of fact and conclusions of law to support the alimony award and suggested the family court identify the alimony as lump sum alimony.  Husband also argued that the amount of child support awarded was incorrect and should have been $897 per month.  Further, Husband argued Wife should not have received attorneys fees.  Husband argued alternatively, Wife should have received less attorneys fees and that the current attorneys fees should have been distributed over more than three payments.  Husband also requested the order include language indicating that Wife testified she was ultimately responsible for the conduct leading to her loss of employment.  Wifes arguments in her motion for reconsideration included: (1) the award of alimony should be increased; (2) the divorce decree should specify if the alimony is lump sum or rehabilitative and include grounds to justify the award for twenty-four months; and (3) the time period for payment of alimony should be enlarged.  
On August 11, 2005, the family court issued an amended decree of divorce.  The amended decree included more detailed findings of fact.  Some of those additional findings included: (1) Husband testified that his adultery occurred after the breakup of the marriage and was not the primary cause of the breakup of the marriage; (2) testimony of both parties indicated that communication in the marriage had been strained for a long time; (3) both parties testified their lifestyle included the frequent use of alcohol; (4) Husbands witnesses testified as to Wifes excessive use of alcohol and her temper and spiteful conduct; and (5) Wife specifically testified she was ultimately responsible for the conduct which led to the loss of her employment.  Thereafter the family court revised the child support award to $897 per month.  
In regards to alimony, the family court found [l]ump sum alimony is appropriate based on the special and exceptional circumstances which exist in this case.  Specifically, [Wife] was employed with a prestigious law firm earning in excess of $50,000 and lost this employment based in part on her conduct.  The family court elaborated and found lump sum alimony was appropriate: (1) because Wife requested any form of spousal support or maintenance; (2) because the award was intended to bridge Wifes standard of living following her period of unemployment until her expected return to the work force; (3) to achieve equity based upon the length of the marriage, the relatively young age of the parties, and their respective abilities to earn income and be free of the need of support from the other; and (4) because permanent periodic alimony would undermine the ability for either party to gain closure to this situation, and would serve as a disincentive for Wife to move forward with her life by remarrying or increasing her earning potential, due to Wifes desire to punish Husband.  The family court modified the alimony to last for thirty-six months in the same monthly amount of $250.  This appeal followed.
STANDARD OF REVIEW

On appeal from a family court order, this Court has authority to correct errors of law and find facts in accordance with its own view of the preponderance of the evidence.  E.D.M. v. T.A.M., 307 S.C. 471, 473, 415 S.E.2d 812, 814 (1992).  When reviewing decisions of the family court, we are cognizant of the fact that it had the opportunity to see the witnesses, hear the testimony delivered from the stand, and had the benefit of that personal observance of and contact with the parties which is of peculiar value in arriving at a correct result in a case of this character.  DuBose v. DuBose, 259 S.C. 418, 423, 192 S.E.2d 329, 331 (1972); see also Scott v. Scott, 354 S.C. 118, 124, 579 S.E.2d 620, 623 (2003) (Because the family court is in a superior position to judge the witnesses demeanor and veracity, its findings should be given broad discretion.). When the evidence is conflicting and susceptible of different inferences, the family court has the duty of determining not only the law of the case, but the facts as well, because it had the benefit of observing the witnesses and determining how much credence to give each witnesss testimony.  Anders v. Anders, 285 S.C. 512, 514, 331 S.E.2d 340, 341 (1985); see also Woodall v. Woodall, 322 S.C. 7, 10, 471 S.E.2d 154, 157 (1996) (holding when evidence is disputed, the appellate court may adhere to the family courts findings).  
The amount to be awarded for alimony, as well as a determination of whether the spouse is entitled to alimony, is within the sound discretion of the family court.  Smith v. Smith, 264 S.C. 624, 628, 216 S.E.2d 541, 543 (1975); see also Patel v. Patel, 359 S.C. 515, 529, 599 S.E.2d 114, 121 (2004) (The amount of alimony is within the [family] courts sound discretion and should not be disturbed on appeal unless an abuse of discretion is shown.).  An abuse of discretion occurs when the decision is controlled by an error of law or is based on factual findings that are without evidentiary support.  Degenhart v. Burriss, 360 S.C. 497, 500, 602 S.E.2d 96, 97 (Ct. App. 2004).  
LAW/ANALYSIS

Wife argues the family court erred in awarding lump sum alimony rather than permanent periodic or rehabilitative alimony.  Additionally, Wife contends the amount of the award was inadequate in light of Husbands ability to pay and Wifes need for an adequate standard of living.  We affirm as modified.
The purpose of alimony is to place the supported spouse, as close as is practical, in the same position of support as during the marriage.  Johnson v. Johnson, 296 S.C. 289, 300, 372 S.E.2d 107, 113 (Ct. App. 1988).  If the claim for alimony is well-founded, the family court has the duty of making an alimony award that is fit, equitable, and just.  Allen v. Allen, 347 S.C. 177, 184, 554 S.E.2d 421, 424 (Ct. App. 2001).  The family court should consider the following factors in awarding alimony: 

 (1) duration of the marriage; (2) physical and emotional health of the parties; (3) educational background of the parties; (4) employment history and earning potential of the parties; (5) standard of living established during the marriage; (6) current and reasonably anticipated earnings of the parties; (7) current and reasonably anticipated expenses of the parties; (8) marital and nonmarital properties of the parties; (9) custody of children; (10) marital misconduct or fault; (11) tax consequences; and (12) prior support obligations; as well as (13) other factors the court considers relevant.

Id. at 184, 554 S.E.2d at 424.  
Section 20-3-130(B) of the South Carolina Code (Supp. 2006) provides, 

 Alimony and separate maintenance and support awards may be granted pendente lite and permanently in such amounts and for periods of time subject to conditions as the court considers just including, but not limited to: 
 
 (1) periodic alimony . . . . 
 (2) lump sum alimony . . . .
 (3) rehabilitative alimony . . . .
 (4) reimbursement alimony . . . .
 (5) separate maintenance and support . . . .
 (6) [s]uch other form of spousal support, under terms and conditions as the court may consider just, as appropriate under the circumstances without limitation to grant more than one form of support.  
 

The South Carolina Supreme Court has held [t]hree important factors in awarding periodic alimony are (1) the duration of the marriage; (2) the overall financial situation of the parties, especially the ability of the supporting spouse to pay; and (3) whether either spouse was more at fault than the other.  Patel, 359 S.C. at 529, 599 S.E.2d at 121.  
Section 20-3-130(B)(2) describes lump sum alimony as a finite total sum to be paid in one installment, or periodically over a period of time, terminating only upon the death of the supported spouse, but not terminable or modifiable based upon remarriage or changed circumstances in the future.  The statute further provides the purpose of lump sum alimony may include, but is not limited to, circumstances in which the family court finds alimony appropriate but determines that the award should be finite and nonmodifiable.  Id. 
The family court should consider the following factors in determining whether to award lump sum alimony: 

 (1) the financial condition or status of the appellant; (2) the needs of the respondent; (3) the health and ages of both parties; (4) each partys earning capacity; (5) the actual income of each party; (6) the individual contributions to the accumulation of their joint wealth; (7) the standard of living by both parties at the time of the divorce; (8) the duration of the marriage; (9) the conduct of the parties; and (10) the special circumstances making any award of lump sum alimony advisable. 

 Atkinson v. Atkinson, 279 S.C. 454, 456-57, 309 S.E.2d 14, 15 (Ct. App. 1983).
Typically, the primary justification for lump sum alimony is the unreliability of the supporting spouse to make regular payments.  See Jones v. Jones, 270 S.C. 280, 241 S.E.2d 904 (1978) (upholding the award of $36,000 in lump sum alimony when husband drank excessively, was not regularly employed, had failed to pay child support for the last five years, threatened to leave the country to avoid payments, and had just inherited property valued near $100,000); Murdock v. Murdock,243 S.C. 218, 133 S.E.2d 323 (1963) (affirming lump sum alimony of $4250 when the husband moved to a distant state, remarried, and had been found in contempt of court for failing to pay pendente lite alimony); Hendricks v. Hendricks,285 S.C. 591, 330 S.E.2d 553 (Ct. App. 1985) (affirming lump sum alimony of $30,000 when husband failed to support his family for nineteen years, quickly spent a $45,000 inheritance by purchasing a truck and paying the hospital bills of a paramour in another state); see also Roy T. Stuckey, Marital Litigation in South Carolina 217 (3d ed. 2001). 
The circumstances in the present case do not justify lump sum alimony.  Husbands employment and income is reliable, he currently resides in the area, and he has not failed to make any support payments.  Accordingly, the family court erred in labeling the award lump sum alimony.
Pursuant to Section 20-3-130(B)(3) rehabilitative alimony is: 

 a finite sum to be paid in one installment or periodically, terminable upon the remarriage or continued cohabitation of the supported spouse, the death of either spouse . . . or the occurrence of a specific event to occur in the future, or modifiable based upon unforeseen events frustrating the good faith efforts of the supported spouse to become self-supporting or the ability of the supporting spouse to pay the rehabilitative alimony.  

The purpose of rehabilitative alimony may include, but is not limited to, circumstances when the family court finds providing for the rehabilitation of the supported spouse appropriate.  Rehabilitative alimony provides modifiable ending dates coinciding with events considered appropriate by the family court such as the completion of job training or education and the like and requires rehabilitative efforts by the supported spouse.  Id.; see also Eagerton v. Eagerton, 285 S.C. 279, 282, 328 S.E.2d 912, 914 (Ct. App. 1985) (The purpose of rehabilitative alimony is to encourage a dependent spouse to become self-supporting by providing alimony for a limited period of time during which the dependent spouse might retrain and rehabilitate himself or herself thereby limiting the duration of the time in which the supporting spouse is burdened by spousal support.).  Moreover, rehabilitative alimony permits a couple to develop their own lives free from obligations to each other.  Id. at 282, 328 S.E.2d at 914-15.
The factors to be considered in awarding rehabilitative alimony include: 

 (1) the duration of the marriage; (2) the age, health, and education of the supported spouse; (3) the financial resources of the parties; (4) the parties accustomed standard of living; (5) the ability of the supporting spouse to meet his needs while meeting those of the supported spouse; (6) the time necessary for the supported spouse to acquire job training or skills; (7) the likelihood that the supported spouse will successfully complete retraining; and (8) the supported spouses likelihood of success in the job market. 

Johnson, at 301-02, 372 S.E.2d at 114.  In order for the family court to grant rehabilitative alimony, the evidence must demonstrate the supported spouse will be self-sufficient at the expiration of the ordered payments.  Toler v. Toler, 292 S.C. 374, 378, 356 S.E.2d 429, 431 (Ct. App. 1987).
While it may be true that Wife needed time to recover from the divorce, she already possesses the necessary skills to be successful in the job market.  Thus, the facts of this case do not fit squarely within the parameters of a typical rehabilitative alimony case.  
Furthermore, Wifes counsel acknowledged at oral argument the facts of this case do not clearly call for permanent periodic alimony.  Although lump sum, rehabilitative, and permanent periodic alimony do not fit the facts of this case, we find ample support in the record for alimony under Section 20-3-130(B)(6), which authorizes the award of [s]uch other form of spousal support, under terms and conditions as the court may consider just, as appropriate under the circumstances.
This court may affirm the family court on any ground appearing in the record. See Rule 220(c), SCRAC (The appellate court may affirm any ruling, order, decision or judgment upon any ground(s) appearing in the Record on Appeal.).  Accordingly, we affirm the family courts award of alimony under section 20-3-130(B)(6).  See C.A.H. v. L.H., 315 S.C. 389, 434 S.E.2d 268 (1993) (although rehabilitative alimony was not proper under the circumstances, the court found ample support in the record for alimony under Section 20-3-130(B)(6)).  This form of alimony is beneficial in the present case because it allows the parties to develop lives separate from each other, which is necessary due to Wifes anger towards Husband.  While Wife did not need retraining, she needed additional time to reenter the workforce and reach the salary range she attained before losing her job.  Although Wife lost her job due to her behavior, that behavior occurred partly as a result of the emotional distress caused when Husband moved out after fifteen years of marriage and subsequently began living with Wifes friend.  We give the family court discretion in deciding whether to award alimony, and based on the circumstances in this case, the family courts decision was not an abuse of discretion.  
The family court awarded Wife $250 per month for 36 months.  This court recognizes the parties current and reasonably anticipated earnings and expenses as well as the fact that husband has enough disposable income to offset some of the marital debt assigned to Wife in the distribution of marital property.  In light of the overall circumstances of this case and Wifes monthly expenses coupled with Husbands monthly disposable income, we hereby modify Wifes alimony award to $500 per month for 36 months.
Accordingly, the family courts order is 
AFFIRMED AS MODIFIED.
HUFF, BEATTY, and WILLIAMS, JJ., concur.

[1] On May 9, 2005, at the hearing on the motion for reconsideration, Husbands attorney maintained that Wife had secured a job.  The record does not contain any evidence of what the job was or what Wifes salary was.  At oral argument the parties confirmed that Wife is now working as a paralegal.