711 S.E.2d 899

**Ex Parte James A. BROWN, Jr., Attorney, Appellant,**

**In re State of South Carolina, Respondent,**

v.

**Alfonzo J. Howard, Defendant.**

**No. 26991.**

Supreme Court of South Carolina.

Submitted Dec. 1, 2010.

Decided June 21, 2011.

Derek J. Enderlin, of Greenville, and James Arthur Brown, Jr., of Beaufort, for Appellant.

Attorney General Alan Wilson and Assistant Deputy Attorney General J. Emory Smith, Jr., both of Columbia, for Respondent.

John S. Nichols and Blake A. Hewitt, both of Bluestein, Nichols, Thompson and Delgado, of Columbia, for Amicus Curiae the South Carolina Bar.

Justice KITTREDGE.

In this direct appeal we review the trial court's denial of Appellant James A. Brown, Jr.'s request for an award of attorney's fees in excess of the $3,500 statutory limit in S.C.Code Ann. section 17–3–50 (2003). We find no abuse of discretion under the unique facts and circumstances presented and affirm.

During the pendency of the appeal, the Court accepted an amicus curiae brief on behalf of the South Carolina Bar concerning the potential constitutional implications arising from the court appointment of attorneys to represent indigent clients. We elect to address this matter of significant public interest. We hold today that the Takings Clause of the Fifth Amendment to the United States Constitution is implicated when an attorney is appointed by the court to represent an indigent litigant. In such circumstances, the attorney's services constitute property entitling the attorney to just compensation.

## I.

Appellant was appointed on March 1, 2007, pursuant to Rule 608, SCACR, to represent Alfonzo J. Howard, an indigent. Howard was charged with multiple crimes, including first degree criminal sexual conduct, two counts of kidnapping, two counts of armed robbery, and possession of a weapon during the commission of a crime.

From the beginning, Appellant complained about the appointment to represent Howard, first to the circuit's chief administrative judge, Perry M. Buckner, and then to the trial

judge, Carmen T. Mullen. Appellant asked to be relieved as counsel, stating that his obligations to an appointed capital case were taking up substantial amounts of time. Judge Buckner's involvement was minimal, as he refused to relieve Appellant, noting that Appellant had not been denied payment. Appellant even filed a motion to "halt prosecution."

Appellant wrote the trial judge, Judge Mullen, stating, "[T]he failure to [exceed the fee cap] now leaves me with no choice but to discontinue working on [Howard's case]." Judge Mullen indicated that she would consider awarding attorney's fees beyond the "cap" ($3,500) after trial, upon submission of affidavits as to time, hourly rates, and overhead. She stated, "I think it's best to do after the trial is over, so we know exactly how much time has, in fact been expended...."

Judge Mullen's preferred timeline did not suit Appellant, however. At a pretrial hearing, the following exchange took place:

Appellant: Well, Your Honor, I respectfully no longer desire to do any work in this case, and I'll stop.

Court: Well, respectfully, Mr. Brown, that's not your choice.

Appellant: I'm not doing anymore work, I'm sorry.

Court: Mr. Brown—

Appellant: I'm not going to do anymore work.

Court:—if you're going to speak to the Court, you're going to stand up.

. . . .

Court:—Mr. Brown, stop. Sir, I'm going to repeat something to you . . . . Respectfully sir you are going to continue on this case.

After the judge explained her decision and began to continue with the hearing, Brown again refused to move forward on the case:

Appellant: Your Honor, I'm not going to proceed on these motions. I move to withdraw.

Court: Respectfully, I'm denying your motion to withdraw

. . . .

. . . .

Court: Mr. Brown, you are an officer of this Court, sir. I am telling you that you are going forward. I am ordering you to go forward.

Appellant: I can't—

Court: You have one choice, as you understand—

Appellant: I cannot do it.

Court:—I can hold you in contempt.

Appellant: I just can't.

. . . .

Court: Sir, you're gonna have two choices right now. You're either going to go forward or I'm going to take you into custody. One of two things, that's what we're doing here, Mr. Brown.

Appellant: I will say this, I'm not going to be able to go forward.

. . .

Court: This Court is telling you to go forward

. . . .

The charges against Howard proceeded to trial. During the trial, Appellant's belligerent unwillingness to comply with the court's order continued:

Appellant: I'm going to ask to withdraw. I cannot be an effective lawyer for my client.

Court: Motion denied.

Appellant: I cannot go forward. . . . I cannot go forward. . . . I cannot go forward.

The trial court, displaying remarkable patience, only threatened Appellant with contempt and instructed Appellant to proceed. Appellant then invoked *his* right to counsel. The trial against Howard was briefly continued to allow Appellant's attorney to appear. Addressing Appellant's attorney, Judge Mullen said,

[W]hat I can't have ... is when I rule against [Appellant] [he is] saying he is going to withdraw as counsel. [Appellant has] done that three times, and he's sat down and refused to proceed with the case. That is simply not professional. It is not consistent with his oath.

. . . .

[Appellant] has consistently refused at different points throughout the pre-hearing trial and now during the trial of this case to continue and has sat down....

After consulting with his attorney, Appellant finally decided to continue with representation of the indigent defendant.

Judge Mullen awarded $17,268.03 as costs for investigative work and expert fees, which was substantially in excess of the statutory cap of $500. S.C.Code Ann. § 17-3-50(B). However, Judge Mullen denied Appellant's motion to award attorney's fees in excess of the statutory amount, $3,500. § 17-3-50(A). The sole basis for denying Appellant an award of fees in excess of the statutory cap was his unprofessional conduct. Judge Mullen stated:

Because of Mr. Brown's actions and antics during the trial of this matter, I find his efforts do not demand nor justify exceeding the statutory maximum fee of $3,500 as provided by our legislature, and therefore, order attorney's fees of $3,500 to be paid to Mr. Brown for his services in this case.

... While I should have held Mr. Brown in contempt of Court for his unprofessional behavior-this Court knows all too well that to do so would require at the least, a mistrial, which would be unfair to both the Defendant and the victims.

## II.

Section 17-3-50 provides:

(A) *When private counsel is appointed* pursuant to this chapter, *he must be paid a reasonable fee* to be determined on the basis of forty dollars an hour for time spent out of court and sixty dollars an hour for time spent in court. The same hourly rates apply in post-conviction proceedings. *Compensation may not exceed three thousand five hundred dollars in a case in which one or more felonies is charged* and one thousand dollars in a case in which only misdemeanors are charged. Compensation must be paid from funds available to the Office of Indigent Defense for the defense of indigents represented by court-appointed, private counsel. The same basis must be employed to determine the value of services provided by the office of the public defender for purposes of Section 17-3-40.

(B) Upon a finding in ex parte proceedings that *investigative, expert, or other services are reasonably necessary for the representation of the defendant, the court shall authorize* the defendant's attorney to obtain such services on behalf of the defendant and shall order the payment, from funds available to the Office of Indigent Defense, of *fees and expenses not to exceed five hundred dollars* as the court considers appropriate.

(C) *Payment in excess of the hourly rates and limits in subsection (A) or (B) is authorized only if the court certifies, in a written order with specific findings of fact, that payment in excess of the rates is necessary to provide compensation adequate to ensure effective assistance of counsel and payment in excess of the limit is appropriate because the services provided were reasonably and necessarily incurred.*

(Emphasis added).

■■ An award of attorney's fees in excess of the section 17-3-50 statutory cap is "within the sound discretion of the trial judge." *Bailey v. State*, 309 S.C. 455, 464, 424 S.E.2d 503, 508 (1992). An abuse of discretion occurs when the ruling lacks evidentiary support or is controlled by an error of law. *Patel v. Patel*, 359 S.C. 515, 529, 599 S.E.2d 114, 121 (2004).

Appellant presents the issue as one of law: may a trial court properly deny a request to exceed the statutory cap for attorney's fees based on the attorney's unprofessional conduct? We answer that question "yes" under the unique and compelling circumstances presented. Given the egregious level of Appellant's inexcusable conduct and persistent disregard of the trial court's orders, we find the trial court did not abuse its discretion in refusing to award fees in excess of the statutory cap.

### III.

The South Carolina Bar appears Amicus Curiae. The Bar contends that the appointment of attorneys to represent indigent litigants implicates the Takings Clause of the Fifth Amendment to the United States Constitution. *See* U.S. Const. amend. V ("[N]or shall private property be taken for

public use without just compensation.").[1] We agree and hold today that the Fifth Amendment Takings Clause is implicated when an attorney is appointed to represent an indigent litigant. In such circumstances, the attorney's services constitute property entitling the attorney to just compensation.

Our willingness to consider the Bar's request and our ruling today in no manner changes the nature of the practice of law in this state. Our holding is a narrow one, limited to an attorney's constitutional entitlement to compensation in appointed cases. We continue to adhere to the view that the license to practice law is a privilege and not a right. As such, the practice of law remains subject to control, regulation, and discipline—all as this Court directs.

## A.

■ The Sixth and Fourteenth Amendments to the United States Constitution compel states to provide counsel to indigent criminal defendants. *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); *see also United States v. Dillon,* 346 F.2d 633, 635 (9th Cir.1965) (stating "the obligation of the legal profession to serve indigents on court order is an ancient and established tradition. . . .""). In South Carolina, this historic obligation of the legal profession is largely administered through Rule 608, SCACR.

■ Rule 608(a) requires members of the South Carolina Bar to "serve as counsel for indigent persons in the circuit and family courts pursuant to statutory and constitutional mandates." The vast majority of attorneys have commendably discharged this responsibility in a manner reflecting the highest and noblest traditions of the legal profession. Such laudable service is woven into the fabric of the legal profession, as exemplified in the lawyer's oath, in which an attorney affirms that "I will assist the defenseless or oppressed by ensuring

---

1. Although not cited by the Bar, the South Carolina Constitution has a Takings Clause. S.C. Const. art. I, § 13(A) ("Except as otherwise provided in this Constitution, private property shall not be taken . . . for public use without just compensation being first made for the property."). Our analysis and holding comports with the Takings Clause in our constitution.

that justice is available to all citizens and will not delay any person's cause for profit or malice." Rule 402(k)(3), SCACR.

We believe the South Carolina General Assembly recognizes the inherent fairness in providing for an award of attorney's fees and costs in appointed cases, as evidenced by section 17–3–50. Section 17–3–50 addresses appointment in criminal cases and post-conviction relief proceedings. Moreover, section 17–3–100 speaks more broadly to our legislature's policy favoring the payment of fees to appointed counsel: "Nothing herein contained is designed to limit the *discretionary authority of a judge to appoint counsel in any case and any such counsel shall be entitled to remuneration and reimbursement* as provided in Sections 17–3–50 and 17–3–80 hereof, so long as funds appropriated herein are available therefor." (Emphasis added.) What the legislature has recognized for statutorily authorized appointments, we now find is additionally entitled to constitutional protection. We extend the constitutional protection to all court-ordered appointments.

█ The Supreme Court of Kansas spoke directly to this issue:

> Attorneys make their living through their services. Their services are the means of their livelihood. We do not expect architects to design public buildings, engineers to design highways, dikes, and bridges, or physicians to treat the indigent without compensation. When attorneys' services are conscripted for the public good, such a taking is akin to the taking of food or clothing from a merchant or the taking of services from any other professional for the public good. And certainly when attorneys are required to donate funds out-of-pocket to subsidize a defense for an indigent defendant, the attorneys are deprived of property in the form of money. We conclude that attorneys' services are property, and are thus subject to Fifth Amendment protection.

*State v. Smith,* 242 Kan. 336, 747 P.2d 816, 842 (1987); *see also Armstrong v. United States,* 364 U.S. 40, 49, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960) (noting that the Takings Clause was "designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole"). We agree with

the Kansas Supreme Court, with one significant caveat. A lawyer is not a merchant; the law is a regulated public service profession. While the merchant and lawyer both seek gain, "the difference between a business and a profession is essentially that while the chief end of a trade or business is personal gain, the chief end of a profession is public service." *In Re Jacobson,* 240 S.C. 436, 448, 126 S.E.2d 346, 353 (1962).

In holding that the Takings Clause is implicated in appointed cases, we revisit two cases in this state's jurisprudence. First, in *Ex parte Dibble,* 279 S.C. 592, 596, 310 S.E.2d 440, 443 (Ct.App.1983), the court of appeals understood well the Bar's concerns, acknowledging that "it is unfair to cast on [lawyers], alone, the burden of serving the needs of the whole society without compensation." While *Dibble* suggested that "[c]ourts may have the inherent power to order that appointed lawyers be compensated from public funds, thus transferring [the burden of appointed representation] to the state where it properly belongs[,]" *id.,* the court ultimately dismissed the lawyers' claim for compensation.

The lawyers in *Dibble* were appointed in a civil case to represent an indigent client who had no right to counsel. The court of appeals articulated well the role of the legal profession in society and noted that courts "have the inherent power ... to appoint lawyers to serve without compensation where it appears reasonably necessary for the court to do justice." *Id.* at 595, 310 S.E.2d at 442. Today, we hold that a court's inherent power to appoint a lawyer to serve is subject to the lawyer's entitlement to just compensation. In recognition of the burden imposed in uncompensated and discretionary appointments, *Dibble* appropriately indicated that counsel should be appointed only in "extraordinary" circumstances when "necessary to render justice." *Id.* at 597, 310 S.E.2d at 443. The appointment of counsel only when "necessary to render justice" should serve to protect the public fisc.

Next, we addressed this underlying tension in *Bailey v. State,* 309 S.C. 455, 424 S.E.2d 503 (1992). *Bailey* dealt with adequate funding in the context of capital litigation. In *Bailey,* the Court echoed *Dibble* and spoke to the legal profession's "traditional and historic role" in society. The Court then acknowledged the financial burden imposed on appointed attorneys in capital cases: "It is an understatement

that the very livelihood of many attorneys appointed to death penalty trials is threatened by this burden, a result fundamentally unfair to those so impacted." *Id.* at 457, 424 S.E.2d at 505. This "burden" may well be greater in a death penalty case, but the same burden (flowing from compelled representation) exists in all appointed cases. It is a matter of degree. The *Bailey* Court avoided the takings issue by ordering compensation pursuant to statute.

Today we address the constitutional issue sidestepped in *Bailey* and hold that a court-appointed attorney's service is property for purposes of the Takings Clause.

### B.

 The Bar requests that we establish formulaic guidelines for the trial courts and practicing Bar in handling "the challenges of complex appointed cases." We decline to set bright-line rules, as we believe the better approach is to defer to the broad discretion of our able trial courts in addressing such claims on a case-by-case basis. The question of a taking is one of law. The question of what constitutes a fair attorney's fee under the circumstances would be one of fact, subject to an abuse of discretion standard of review. Take the case before us—Appellant's takings argument would be resolved by the payment of *some* amount as attorney's fees; whether the amount awarded is constitutionally appropriate or just under the circumstances is a question of fact, subject to an abuse of discretion standard.

We believe the case-by-case approach is in accord with the amicus curiae brief. Consider the following excerpt from the Bar's brief: "This does not mean that a lawyer is entitled to a fee which exceeds the statutory cap in *all* cases. Since takings analysis is a sliding scale, it is possible that an appointed case might require so small an allocation of a lawyer's time that a lawyer is entitled to no fee for his services." (Br. for South Carolina Bar as Amicus Curiae 4).[2]

---

2. One area of particular concern to the Bar is the general practice in our trial courts of prohibiting interim payments. As advocated in the Bar's brief, appointed attorneys should be able to request "that lower courts take an early look at the question of attorney's fees ... as opposed to postponing the decision until the end of trial." We do not

■ The Bar's position reflects its recognition of the unique nature and role of the legal profession in society, thus explaining its preference for a "sliding scale" approach. *Bailey* spoke to this in the statutory context, and we agree with the Bar that it applies in the constitutional context: "[an] appointed attorney should not expect to be compensated at *market rate*, rather, at a reasonable, but lesser rate, which reflects the unique difficulty these cases present as balanced with the attorney's obligation to defend the indigent." 309 S.C. at 464, 424 S.E.2d at 508.

## C.

We thus recognize the historic obligation of an attorney to honor court-ordered appointments for the representation of indigents, while also recognizing that the attorney's service constitutes property for Fifth Amendment purposes where there is a right to counsel. We do not view these principles as mutually exclusive. In harmonizing these positions, a trial court should be guided by *Bailey*'s approach to just compensation assessed in light of the public service foundation associated with membership in the legal profession.

The Court's holding applies to all court-appointed representations commenced on or after July 1, 2012.[3]

## IV.

■ We find no abuse of discretion in the trial court's decision to deny Appellant's motion to exceed the $3,500 statutory cap for attorney's fees. Because of the significant public interest involved, we accept the South Carolina Bar's amicus curiae brief and hold that a court-appointed attorney's

---

foreclose a partial award of fees and costs prior to the conclusion of the appointed representation, but interim awards should be granted sparingly and only under compelling circumstances.

3. The budgeting process for the fiscal year beginning July 1, 2011, has been completed, and this opinion comes too late for legislative action this year. As a result, we defer to the 2012 legislative session and the fiscal year beginning July 1, 2012.

service on behalf of an indigent litigant is property for purposes of the Takings Clause of the Fifth Amendment.

**AFFIRMED.**

TOAL, C.J., BEATTY and HEARN, JJ., concur.

PLEICONES, J., dissenting in a separate opinion.

Justice PLEICONES.

I respectfully dissent. In my opinion, the trial court abused its discretion in denying Appellant's request for an award of attorney's fees in excess of the statutory limit.

Section 17–3–50 provides:

(C) Payment in excess of the hourly rates and limits in subsection (A) or (B) is authorized only if the court certifies, in a written order with specific findings of fact, *that payment in excess of the rates is necessary to provide compensation adequate to ensure effective assistance of counsel and payment in excess of the limit is appropriate because the services provided were reasonably and necessarily incurred.*

(Emphasis added).

As noted by the majority, the sole basis for denying Appellant an award of fees in excess of the statutory limit was his unprofessional conduct. In my opinion, the trial court abused its discretion in failing to consider, as required by the statute, whether the requested payment in excess of the limit was necessary to provide effective assistance of counsel or whether the services provided were reasonably and necessarily incurred. In my opinion, the trial court should have allowed Appellant to submit evidence as to the reasonableness of his fees, and reviewed it accordingly. Even in light of Appellant's undeniably petulant behavior, I would find the trial court abused its discretion and would remand the matter with instructions to evaluate the necessity for and worth of Appellant's services.

As I would find the trial court abused its discretion, I would decline to address the Takings Clause issue submitted by the South Carolina Bar. *See Morris v. Anderson County,* 349 S.C. 607, 564 S.E.2d 649 (2002) (Court will not unnecessarily reach

constitutional questions); *see also* Rule 213, SCACR (an amicus brief is limited to the issues raised by the parties).